IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HUONG TRINH,                                          Case No. 3:22-cv-01999-SB

               Plaintiff,                    **FINDINGS AND**
                                       **RECOMMENDATION**

      v.

SHRINERS HOSPITALS FOR CHILDREN, a
corporation,

               Defendant.

_____

**BECKERMAN, U.S. Magistrate Judge.**

       Plaintiff Huong Trinh ("Trinh") filed this lawsuit against her former employer, Defendant

Shriners Hospitals for Children ("SHC"), alleging religious discrimination claims under Title VII

of the Civil Rights Act ("Title VII") and Oregon Revised Statutes ("ORS") § 659A.030. SHC

moves, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), to dismiss Trinh's

religious discrimination claims, with prejudice, for failure to state a claim upon which relief can

be granted. In the alternative, SHC moves for summary judgment on Trinh's claims, pursuant to

Rule 56(a).

       The Court has federal question jurisdiction over Trinh's Title VII claim under 28 U.S.C.

§§ 1331 and 1343, and supplemental jurisdiction over Trinh's state law claim under 28 U.S.C.

PAGE 1 – FINDINGS AND RECOMMENDATION

§ 1367, and not all parties have consented to the jurisdiction of a magistrate judge under 28

U.S.C. § 636(c). For the reasons explained below, the Court recommends that the district judge

deny SHC's motion.

## BACKGROUND

Trinh began working for SHC as an in-patient registered nurse in June 2018. (Second

Am. Compl. ¶ 5, ECF No. 22.) Trinh worked at SHC's hospital in Portland, Oregon, and

"directly with pediatric patients hospitalized with a variety of illnesses, injuries, and other

medical conditions." (*Id.*)

On September 16, 2021, SHC announced a policy requiring employees to be vaccinated

against COVID-19, and cited Oregon Administrative Rule ("OAR") 333-019-1010 in support of

its policy. (*Id.* ¶ 11; *see also id.* ¶ 10, reflecting that on December 18, 2020, SHC informed its

staff members about its future plan to "implement[] and enforc[e] a vaccine mandate in the

workplace"). SHC also announced that staff members could "request an exemption on the basis

of their sincerely held religious beliefs," and attached the paperwork necessary to do so. (*Id.*

¶ 11.)

OAR 333-019-1010, also known as the "Healthcare Order," codified one of the Oregon

Health Authority's ("OHA") then-applicable vaccination rules, and followed the Food and Drug

Administration's approval of the COVID-19 vaccine. *See, e.g.*, *Brown v. Nw. Permanente, P.C.*,

*No. 3:22-cv-00986-SI, 2023 WL 6147178, at *3-4 (D. Or. Sept. 20, 2023)* (reviewing a motion

to dismiss and describing the OHA's rules and Healthcare Order, which the OHA adopted on

August 25, 2021, modified on September 1, 2021, suspended in mid-2023, and repealed on

November 6, 2023. The Healthcare Order addressed the state's unvaccinated population,

COVID-19 variants, an increase in breakthrough COVID-19 cases in the state's vaccinated

population, and the state's need to help control outbreaks and protect patients and the state's

healthcare workforce:

> Healthcare providers and healthcare staff have contact with multiple patients over
> the course of a typical day and week, including providers that provide care for
> people in their homes. Individuals cared for in these settings are more likely than
> the general public to have conditions that put them at risk for complications due to
> COVID-19. COVID-19 variants are running through the state's unvaccinated
> population and causing an increase in breakthrough cases for those who are fully
> vaccinated. This rule is necessary to help control COVID-19, protect patients, and
> to protect the state's healthcare workforce.

*Brown*, 2023 WL 6147178, at *2 (quoting OR. ADMIN. R. 333-019-1010(1)).

Given "these concerns, the Healthcare Order provided that after October 18, 2021,

'[h]ealth care providers and . . . staff [could] not work, learn, study, assist, observe, or volunteer

in a healthcare setting unless they [were] fully vaccinated or have provided documentation of a

medical or religious exception.'" *Id.* (quoting OR. ADMIN. R. 333-019-1010(3)(a)). In addition,

employers "who grant[ed] a medical or religious exception to the vaccination requirement [were

required to] take reasonable steps to ensure that unvaccinated healthcare providers and . . . staff

[were] protected from contracting and spreading COVID-19." *Id.* (quoting OR. ADMIN. R. 333-

019-1010(4)).

On October 1, 2021, after receiving notice of SHC's policy requiring employees to be

vaccinated against COVID-19, Trinh filed the paperwork necessary to request a religious

exemption. (Second Am. Compl. ¶ 11.) In support of her request, Trinh explained, among other

things, that she is a Christian and Buddhist, her Buddhist beliefs prevent her from "us[ing] any

product that takes its origin in abortion," because "[a]bortion is killing . . . [and] violates the first

[Buddhist] precept of no killings," and based on these beliefs and others and the fact that the

vaccines were "produced with aborted fetal cell lines," she was requesting a religious exemption.[1] (*Id.*)

On October 13, 2021, Trinh received notice that SHC denied her request for a religious exemption. (*Id.* ¶ 12.) SHC terminated Trinh's employment five days later, on October 18, 2021. (*Id.* ¶ 17.) After receiving a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC") on October 8, 2022 (*id.* ¶ 1), Trinh filed this lawsuit against SHC on December 29, 2022, alleging claims of religious discrimination. SHC's pending motion followed.

## LEGAL STANDARDS

### I.    FAILURE TO STATE A CLAIM

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court has explained that "[a] claim has facial plausibility when the plaintiff pleads

---

[1] Trinh quotes a significant portion of her exemption request in her second amended complaint. (*See* Second Am. Compl. ¶ 11.) SHC in turn argues that pursuant to the incorporation by reference doctrine, the Court may consider Trinh's request at this stage of proceedings. (*See* Def.'s Mot. Dismiss & Alt. Mot. Summ. J. ("Def.'s Mot.") at 15 n.5, ECF No. 25, stating as much; Decl. Sarah Ames Benedict Supp. Def.'s Mot. Dismiss & Alt. Mot. Summ. J. ("Benedict Decl.") ¶ 2, ECF No. 26; *id.* Ex. 1 at 1-2, attaching Trinh's two-page exemption request). Considering that Trinh relies on and alleges the contents of her exemption request and there is no dispute as to Trinh's exemption request's relevance and authenticity, the Court agrees that it may consider Trinh's request at this stage and under the incorporation by reference doctrine. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) ("We have extended the doctrine of incorporation by reference to consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance."); *see also Gamon v. Shriners Hosps. for Child.*, No. 3:23-cv-00216-IM, 2024 WL 641715, at *1 n.1 (D. Or. Feb. 15, 2024) ("The background facts come from the First Amended Complaint and the vaccine exemption form Plaintiff attached to the Complaint. The latter document is incorporated by reference[.]").

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although "[t]he plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Thus, "where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## II.    SUMMARY JUDGMENT

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). At the summary judgment stage, the court views the facts in the light most favorable to the non-moving party, and draws all reasonable inferences in favor of that party. *See Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005). The court does not assess the credibility of witnesses, weigh evidence, or determine the truth of matters in dispute. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## DISCUSSION

SHC moves to dismiss or for summary judgment on Trinh's religious discrimination claims under Title VII and ORS § 659A.030. The Court recommends that the district judge deny SHC's motion.

///

///

PAGE 5 – FINDINGS AND RECOMMENDATION

## I.    TRINH'S CLAIMS

Before turning to the parties' arguments, the Court briefly describes Trinh's claims and applicable law.

### A.    Trinh's Failure to Accommodate Theory

Trinh alleges that SHC violated Title VII and ORS § 659A.030(1)(a) by failing to accommodate her request for a religious exemption from SHC's vaccine mandate and instead terminating her employment. (Second Am. Compl. ¶¶ 20-29.) Both Title VII and ORS § 659A.030(1)(a) make it unlawful for an employer to discharge an individual "because of" their "religion." *See* 42 U.S.C. § 2000e-2(a)(1) (making it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion"); OR. REV. STAT. § 659A.030(1)(a) (providing that "[i]t is an unlawful employment practice . . . [f]or an employer, because of an individual's . . . religion, . . . to refuse to hire or employ the individual or to bar or discharge the individual from employment").

Title VII defines "religion" as including "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate . . . [the] employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). Given that "Congress defined 'religion,' for Title VII's purposes, as 'includ[ing] all aspects of religious observance and practice, as well as belief[,]' . . . religious [belief] is one of the protected characteristics that cannot be accorded disparate treatment and must be accommodated[, absent undue hardship]." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774-75 (2015) (quoting 42 U.S.C. § 2000e(j)). Consequently, a Title VII plaintiff's religious discrimination claim may be based on

a failure to accommodate theory. *See Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004) (recognizing that a plaintiff's "claim for religious discrimination under Title VII can be asserted under several different theories, including . . . failure to accommodate") (citations omitted).

"Courts construe Oregon's statutory counterpart . . . as identical to Title VII." *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1437 n.2 (9th Cir. 1993) (discussing the predecessor version of ORS § 659A.030); *see also Moore v. Portland Pub. Schs.*, 537 P.3d 544, 559 (Or. Ct. App. 2023) ("Oregon courts look to federal cases construing Title VII of the federal Civil Rights Act for guidance in construing ORS 659A.030, because its predecessor, *former* ORS 659.030, *renumbered as* ORS 659A.030 . . . , was modeled after that act." (citing *H.K. v. Spine Surgery Ctr. of Eugene, LLC*, 470 P.3d 403, 406 (Or. Ct. App. 2020), *rev. denied*, 484 P.3d 319 (Or. 2021))). Accordingly, the Court does not need separately to analyze Trinh's religious discrimination claims under Title VII and ORS § 659A.030. *See Heller*, 8 F.3d at 1437-41 & n.2 (analyzing the plaintiff's failure to accommodate theory under the Title VII framework after noting that the plaintiff's Oregon "statutory claim succeed[ed] or fail[ed] with his Title VII claim"; *Brown*, 2023 WL 6147178, at *3-6 (addressing a failure to accommodate theory and noting that "[c]ourts analyze claims for religious discrimination under ORS § 659A.030 and Title VII together").

**B.    Recent Circuit Precedent**

In a recent published opinion, the Ninth Circuit addressed whether the plaintiff adequately "ple[d] a prima facie case of failure to accommodate religion under Title VII," and determined that the plaintiff "stated [such a] claim[] under Title VII." *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1218, 1222-24 (9th Cir. 2023). As a threshold matter, the Ninth Circuit observed that "[c]laims under Title VII . . . for failure to accommodate religion

are . . . analyzed under a burden-shifting framework." *Id.* at 1222 (citing *Heller*, 8 F.3d at 1440). The Ninth Circuit explained that under this framework, "the employee must plead a prima facie case of failure to accommodate religion," and "if the employee is successful, the employer can show that it was nonetheless justified in not accommodating the employee's religious beliefs or practices." *Id.* (citing *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 830 (9th Cir. 1999)).

Consistent with this understanding, the Ninth Circuit turned to what a plaintiff must allege "[t]o plead a prima facie case of failure to accommodate religion under Title VII[.]" *Id.* The Ninth Circuit explained that "[t]o plead [such] a prima facie case . . . , a plaintiff must allege, among other things, that she holds 'a bona fide religious belief' that conflicts with an employment requirement."[2] *Id.* (quoting *Heller*, 8 F.3d at 1438). The Ninth Circuit held that the plaintiff had "adequately alleged that [such a requirement] pose[d] a conflict with her religious beliefs." *Id.* at 1222-24.

In support of its holding, the Ninth Circuit explained that "[t]he Supreme Court has, albeit in the free exercise context, cautioned against second-guessing the reasonableness of an individual's assertion that a requirement burdens her religious beliefs, emphasizing that a court's 'narrow function . . . in this context is to determine whether the line drawn reflects an honest conviction.'" *Id.* at 1223 (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 725 (2014)). The Ninth Circuit also explained that although "[t]his principle does not mean that courts must take plaintiffs' conclusory assertions of violations of their religious beliefs at face

---

[2] "To establish a prima facie case for religious discrimination under a failure-to-accommodate theory, an employee must [also] show . . . [that] she informed her employer of the belief and conflict[,] and . . . the employer discharged, threatened, or otherwise subjected her to an adverse employment action because of h[er] inability to fulfill the job requirement." *Keene v. City & Cnty. of S.F.*, No. 22-16567, 2023 WL 3451687, at * 2 (9th Cir. May 15, 2023) (brackets omitted) (quoting *Berry v. Dep't of Soc. Servs.*, 447 F.3d 642, 655 (9th Cir. 2006)).

value[,] . . . [a Title VII plaintiff's] burden to allege a conflict with religious beliefs is fairly minimal." *Id.* (citation omitted) (citing *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 714 (1981)).

After noting that the defendant did "not otherwise contest the sufficiency of [the plaintiff's] prima facie case," the Ninth Circuit explained that its next inquiry was "whether the [defendant could] rebut [the plaintiff's] prima facie case by demonstrating that it was justified in not accommodating her religious beliefs." *Id.* at 1224. On this issue, the Ninth Circuit reiterated that "[o]nce an employee establishes a prima facie case of failure to accommodate religion, the burden shifts to the employer to show 'either that it initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship.'" *Id.* (quoting *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998)). Additionally, the Ninth Circuit explained that "[u]ndue hardship is an affirmative defense . . . , and accordingly dismissal on that ground is proper 'only if the defendant shows some obvious bar to securing relief on the face of the complaint' or in 'any judicially noticeable materials.'" *Id.* at 1224-25 (citing *Tabura v. Kellogg USA*, 880 F.3d 544, 557 (10th Cir. 2018) and quoting *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014)).

Thereafter, the Ninth Circuit held that because an undue hardship defense was "not obvious from the face of [the plaintiff's] [c]omplaint," it could not "consider the [defendant's] undue hardship defense at this stage in the proceedings" (i.e., the motion to dismiss/pleading stage). *Id.* at 1226-27. For all of these reasons, the Ninth Circuit reversed the district court's dismissal of the plaintiff's Title VII claim for failure to accommodate her religion. *Id.* at 1226-28.

## II.    SHC'S MOTION

SHC moves to dismiss or, alternatively, for summary judgment on Trinh's religious discrimination claims under Title VII and ORS § 659A.030. The parties dispute whether SHC relies on matters outside the pleadings in seeking dismissal under Rule 12(b)(6) and, relatedly, whether it would be appropriate for the Court to consider SHC's alternative motion for summary judgment. The Court addresses the parties' procedural disputes in its analysis of the merits.

### A.    Applicable Law

#### 1.    Matters Outside the Pleadings

"In our adversary system, it is generally up to the parties to decide, within the parameters of the applicable procedural rules, what particular relief they wish to seek, what type of motion they wish to present to obtain that relief, and which arguments they wish to make in support." *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1059 (9th Cir. 2023) (citing *United States v. Sineneng-Smith*, 590 U.S. 371, 375-76, 379-80 (2020) and *Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008)). In some cases, however, "the Federal Rules allow the district court, with appropriate notice, to raise issues *sua sponte* and even to convert the form of the motion that a party has chosen to present to the court." *Id.* For example, if a party presents the district court with "'matters outside the pleadings' in connection with a [Rule 12(b)(6)] motion . . . , the district court may choose to exclude such extrinsic matters and address the motion under the applicable Rule 12 standards, or it may convert the motion into 'one for summary judgment under Rule 56.'" *Id.* (quoting FED. R. CIV. P. 12(d)). If the district court converts the Rule 12(b)(6) motion into a Rule 56 motion, the district "court must afford all parties 'a reasonable

opportunity to present all the material that is pertinent to the motion[.]'"[3] *Id.* (quoting FED. R.
CIV. P. 12(d)).

A district court's decision to convert a Rule 12(b)(6) motion into a Rule 56 motion often
turns on whether the party has presented "matters outside the pleadings" within the meaning of
Rule 12(d). *See Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1117 (9th Cir. 2018) (holding that "the
district court was not required to convert the [defendant's] Rule 12(b)(6) motion to a summary
judgment motion . . . because it did not consider any material outside the pleadings"); FED. R.
CIV. P. 12(d) (providing that "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the
pleadings are presented to and not excluded by the court, the motion must be treated as one for
summary judgment under Rule 56"). In addressing whether the district court in *Hicks* considered
"any matters requiring conversion under Rule 12(d)," the Ninth Circuit explained that "the
'pleadings' include more than just the complaint." 897 F.3d at 1117. Thus, a district court may
consider the following material without converting a Rule 12(b)(6) motion into a Rule 56
motion: (1) "exhibits attached to the [c]omplaint," (2) "matters properly subject to judicial
notice," (3) "documents whose contents are alleged in a complaint and whose authenticity no
party questions, but which are not physically attached to the [plaintiff's] pleading," and (4) the
"facts [in a plaintiff's complaint] which have since been conclusively contradicted by [the]
plaintiff['s] concessions[.]" *Id.* (quoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998

---

[3] Unlike "reverse conversion," which "will rarely (if ever) help to 'secure the just,
speedy, and inexpensive determination' of the action," a district court's conversion of a Rule
12(b)(6) motion into a Rule 56 motion "allows for a prompt and efficient means of achieving a
definitive resolution of a case-dispositive issue based on an evidentiary record that is focused on,
and adequate for, that specific purpose" *Jones*, 74 F.4th at 1059 (quoting FED. R. CIV. P. 1 and
citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 (3d
ed. 2004)).

(9th Cir. 2010), *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1043 (9th Cir.

2015), and *Chongris v. Bd. of Appeals of Town of Andover*, 811 F.2d 36, 37 (1st Cir. 1987)).

### 2.    Separate or Alternative Motions

Even when parties file separate or alternative Rule 12(b)(6) and Rule 56 motions, a

district court must consider whether and to what extent it is appropriate to utilize matters outside

the pleadings:

> . . . The element that triggers the conversion is a challenge to the
> sufficiency of the pleader's claim supported by extra-pleading material. As many
> cases recognize, it is not relevant how the defense actually is denominated in the
> motion. . . .
>
> . . . .
>
> . . . [W]henever outside matters are presented to and not excluded by the
> court, the motion will be considered by the appellate court as one for summary
> judgment even though the district court designates it a motion to dismiss. The
> same is true if a Rule 12(b)(6) motion to dismiss is considered at the same time as
> a separate or alternative summary judgment motion. It has been held that when a
> motion to dismiss is combined with a motion for summary judgment and outside
> matters are considered by the court with respect only to the latter motion, the
> district judge may dispose of the motion either under Rule 56 or may limit its
> disposition to the motion to dismiss. However, if the outside matter introduced for
> purposes of the summary judgment motion is utilized by the district court to
> dispose of the motion to dismiss, the latter must be converted into a motion for
> summary judgment by following the terms of Rule 12(d).

5C Charles Alan Wright et al., *Federal Practice and Procedure* § 1366 (3d ed. June 2024

update) (footnotes omitted); *see also S & S Logging Co. v. Baker*, 366 F.2d 617, 619 (9th Cir.

1966) (recognizing that the defendants filed a motion to dismiss the complaint pursuant to Rule

12(b)(6) and "[i]n the alternative . . . asked for summary judgment," and stating that the

defendants' "motion for summary judgment was supported by affidavits and depositions, which

raise[d] the question whether the whole motion should not be treated as one for summary

judgment").

///

B.    **Analysis**

The parties dispute whether SHC relies on matters outside the pleadings in seeking

dismissal of Trinh's claims under Rule 12(b)(6).[4] To the extent SHC invites the Court to consider

its motion and materials under the summary judgment standard (*see* Def.'s Mot. at 8; Def.'s

Reply at 7 n.1), Trinh advances several reasons why it would be improper for the Court to do so,

including because Trinh has not had "a reasonable opportunity to gather evidence." (Pl.'s Resp.

at 2, 5-7.)

In support of its Rule 12(b)(6) motion, SHC relies on publications addressing

manufacturers' use of fetal cell lines in developing the COVID-19 vaccine and other contexts,

including to "test ubiquitous over-the-counter medications[.]" (*See* Def.'s Mot. at 22-24, citing or

quoting nineteen publications and asking the Court to "take judicial notice of the publications

cited in this motion" as undisputed matters of public record; Decl. Meagan Himes Supp. Def.'s

Mot. Dismiss & Alt. Mot. Summ. J. ("Himes Decl.") ¶¶ 2-20, ECF No. 37; *id.* Exs. 1-19,

attaching the nineteen publications). Additionally, SHC relies on the religious exemption request

that Trinh submitted to SHC and the emails that Trinh and SHC exchanged during the interactive

process, all of which SHC obtained from Trinh's EEOC file. (Benedict Decl. ¶ 2; *id.* Ex. 1 at 1-

8.)

As discussed in footnote one, the Court may consider Trinh's exemption request at the

pleading stage, because Trinh incorporates it by reference in her second amended complaint. The

Court also notes that no party questions the authenticity of Trinh's exemption request. *See Hicks*,

897 F.3d at 1117 (noting that the "pleadings" include not only the complaint but also "documents

---

[4] The parties address their positions throughout their motion papers. (*See* Def.'s Mot. at 8,
12 n.2, 15 n.5, 20 n.11, 23 n.12, 26 n.16; Pl.'s Resp. Def.'s Mot. Dismiss & Alt. Mot. Summ. J.
("Pl.'s Resp.") at 2, 5-8, ECF No. 33; Def.'s Reply Supp. Mot. Dismiss & Alt. Mot. Summ. J.
("Def.'s Reply") at 7 n.1, 11-14, ECF No. 36.)

whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading") (simplified).

The Court's analysis below addresses whether SHC otherwise relies on "matters outside of the pleadings." Absent such reliance, the Court need not resolve disputes about the propriety of conversion or whether Trinh received a "reasonable opportunity to present all the material that is pertinent to the motion." *See* 5C Charles Alan Wright et al., *Federal Practice and Procedure* § 1366 (3d ed. June 2024 update) ("Perhaps most significantly, as is recognized by many courts, it is important that the district court give the parties notice of the changed status of the motion and a 'reasonable opportunity to present all the material that is pertinent to the motion.'").

### 1.    SHC's Publications and the "Fungibility" of Trinh's Beliefs

SHC argues that the Court may take judicial notice of the publications it cites because they are "'matters of public record' that do not contain facts 'subject to reasonable dispute' or challenge." (Def.'s Mot. at 23 n. 12, citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001); Def.'s Reply at 11-12.) In its reply, SHC argues that Trinh does "not dispute the collective content of the materials" but "[e]ven if she did, the publications . . . would take precedence, because it is not subject to reasonable dispute that 'using products, medical and otherwise, that ha[ve] had recourse to [aborted fetal cell lines] at some stage or other' is a 'practical inevitability.'" (Def.'s Reply at 12, quoting Def.'s Mot. at 24, which quoted a Catholic publication's observation about how an investigation demonstrated the "practical inevitability" of such usage and that "[a]voiding [these products] entirely would mean going completely off the grid").

"Judicial notice under [FED. R. EVID.] 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting FED. R. EVID. 201(b)). It is well settled that "[a] fact is 'not subject

to reasonable dispute' if it is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id.* (quoting FED. R. EVID. 201(b)(1)-(2)). Thus, "'[a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment[,]' . . . [b]ut a court cannot take judicial notice of disputed facts contained in such public records." *Id.* (quoting *Lee*, 250 F.3d at 689).

On several occasions, the Ninth Circuit has addressed to extent to which it was appropriate to take judicial notice of publications. In *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010), for example, the defendant "move[d] for judicial notice of the fact that various newspapers, magazines, and books have published information about [a sixteenth-century artist's oil paintings]." *Id.* The Ninth Circuit explained that "[c]ourts may take judicial notice of publications introduced to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true." *Id.* (simplified). The Ninth Circuit also stated that the "publications [satisfied] the standards for admissibility set forth in [FED. R. EVID.] 201(b)." *Id.* For these reasons, the Ninth Circuit took "judicial notice of [the publications] solely as an indication of what information was in the public realm at the time." *Id.*

Similarly, in *Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*, 899 F.3d 1081, 1087 (9th Cir. 2018), the Ninth Circuit observed that "in September 2016, Mexican newspaper *La Jornada* reported that [the defendant's former director general] had been arrested by Mexican authorities for executing . . . [a] contract without proper authority." *Id.* In an accompanying footnote, the Ninth Circuit stated that the defendant's "motion for judicial notice of this fact, [was] granted." *Id.* at 1087 n.2. The Ninth Circuit, however, explained that it took "notice of the fact of publication, but [did] not assume the truth of the article's contents." *Id.* (citing *Van Saher,*

592 at 960); *see also O'Brien v. Said*, No. 22-15258, 2024 WL 222258, at *1 (9th Cir. Jan. 22, 2024) (denying the plaintiff's "request for judicial notice of the contents of several medical articles," and noting that "courts may not take judicial notice of publications for the purpose of showing that the contents of the publications were in fact true" (citing *Van Saher*, 592 F.3d at 960)).

Consistent with these authorities and with respect to the nineteen publications that SHC cites in its motion, the Court concludes that it may take judicial notice of "the fact of publication," *Packsys*, 899 F.3d at 1087 n.2, and "what was in the public realm at the time, [but] not whether the contents of [the nineteen publications are] in fact true." *Von Saher*, 592 F.3d at 960. SHC, however, does not merely seek judicial notice of the fact of publication and what was in the public realm.

SHC argues that Trinh does not "dispute the collective contents" of the publications, and even if she did, the publications "take precedence" because the "practical inevitability" of using products derived from, or connected to, aborted fetal cell lines is not subject to reasonable dispute. (Pl.'s Reply at 12.) Trinh does not state that she "disputes the collective contents" of SHC's publications, but she does argue the Court "should disregard" the publications, which concern an "issue for the parties to explore at a later stage[.]" (Pl.'s Resp. at 12-13.) At minimum, then, Trinh does not concede that all nineteen publications' contents are beyond dispute. *See generally Owino v. Holder*, 771 F.3d 527, 534 n.4 (9th Cir. 2014) (denying the plaintiff's motion to take judicial notice of an "Amnesty International article about conditions in Kenya," which postdated a relevant agency decision, because the government defendant did not "concede that the facts in [the] article [were] beyond dispute, and [the plaintiff] ha[d] not so demonstrated"); *see also Health Freedom Def. Fund, Inc. v. Carvalho*, 104 F. 4th 715, 721 n.2

(9th Cir. 2024) (granting the plaintiff's request to take "judicial notice that [the defendant school district] voted to withdraw [a vaccine mandate-related employment] [p]olicy on September 26, 2023, and that various documents were submitted, and statements made, in connection with that repeal," but denying the plaintiff's request to "take judicial notice of the truth of the claims made in such written or oral statements" (citing *Lee*, 250 F.3d at 689-90, and *Owino*, 771 F.3d at 534 n.4)).

Further, and as explained below, even if the "practical inevitability" of using products derived from, or connected to, aborted fetal cell lines is not subject to reasonable dispute and judicially noticeable, SHC's publications do not support rejecting Trinh's factual allegations. *See Health Freedom*, 104 F.4th at 725 ("But even if the materials offered by LAUSD are subject to judicial notice, they do not support rejecting Plaintiffs' allegations."). Nor would the Court's acceptance of and reliance on SHC's publications facilitate disposition of this action under Rule 56. *See generally* 5C Charles Alan Wright et al., *Federal Practice and Procedure* § 1366 (3d ed. June 2024 update) ("[F]ederal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it. . . . This discretion generally will be exercised on the basis of the district court's determination of whether or not the proffered material, and the resulting conversion . . . , is likely to facilitate the disposition of the action. When the extra-pleading material . . . is scanty, incomplete, or inconclusive, the district court probably will reject it.") (footnotes omitted).

SHC offers the publications in support of its argument that Trinh's "stated objection to the vaccine (that the available vaccines had been tested on cell lines derived from long-ago aborted fetal cells) . . . cannot form the basis for valid religious discrimination claims under state

or federal law." (Def.'s Mot. at 2, 21-25.) SHC maintains that the connection between what

Trinh's employment duty required her to do (receiving the COVID-19 vaccine) and the end that

Trinh believed was incompatible with her beliefs (the vaccine's connection to abortion) is simply

too attenuated, and therefore "fungible enough" to "allow [Trinh] discretion to avoid virtually

any job requirement that she does not like." (*See id.* at 22, 25, focusing on the "exceedingly

attenuated" "connection between the COVID-19 vaccines and abortion[, which is] the source

of . . . Trinh's objection," and the "attenuated connection between the presumed root of [Trinh's]

objection (an abortion) and any vaccine"). SHC adds that such an objection is "insufficient, as a

matter of law, to form a sincerely held religious belief protected under Title VII [or state law]."[5]

(*Id.*) (simplified).

Before the parties completed their briefing on the pending motion, the assigned district

judge rejected a similar argument in *Gamon*, 2024 WL 641715, at *5, a case involving SHC and

SHC's and Trinh's current counsel. In that case, SHC moved to dismiss the plaintiff's first

amended complaint under Rule 12(b)(6), and the district judge declined to "adopt a rule that a

---

[5] In its motion and support of its fungibility argument, SHC cited only caselaw, its
publications, and the anti-abortion theory identified in paragraph eleven of Trinh's second
amended complaint. (*See* Def.'s Mot. at 21-25.) Unlike the previous, opening section of its
arguments, SHC also proceeded on the assumption that Trinh "alleged sufficient facts about her
religious belief and how it conflicted with the COVID-19 vaccination requirement." (*Id.* at 21.)
In its reply, SHC makes a passing reference to how it is clear from the emails that the parties
exchanged during the interactive process that the "root" of Trinh's objections is "nonreligious
bodily integrity and health concerns," because Trinh did not refer explicitly to anti-abortion
beliefs in those emails. (Def.'s Reply at 6.) After doing so, however, SHC explains that
"[d]espite the singular reference to her opposition to abortion, [SHC] devoted nearly five pages
of its [m]otion to demonstrating that, as a matter of law, . . . Trinh's alleged belief on that ground
*still* does not fall under the auspices of Title VII," because it is too fungible to be entitled to
protection. (*Id.*) In accordance with SHC's motion and representations, the Court treats SHC's
fungibility argument as challenging the legal sufficiency of Trinh's anti-abortion theory on its
face, and proceeds on the "[a]ssum[ption] . . . that . . . Trinh alleged sufficient facts about her
religious belief and how it conflicted with the COVID-19 vaccination requirements." (Def.'s
Mot. at 21.)

Title VII plaintiff cannot allege religious beliefs that are fungible enough to impermissibly allow her to avoid all unwanted legal obligations." *Id.* The district judge explained that Ninth Circuit case law compelled this result at the pleading stage but SHC's argument was "not without some force" and SHC had not challenged the sincerity of the plaintiff's religious beliefs in its motion to dismiss:

> Defendant next asks this Court to adopt a rule that a Title VII plaintiff cannot allege religious beliefs that are fungible enough to impermissibly allow her to avoid all unwanted legal obligations. This argument is not without some force—as the Supreme Court and Ninth Circuit have both recognized, "the very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests." *Jones v. Bradley*, 590 F.2d 294, 295 n.2 (9th Cir. 1979) (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972)); *cf. Emp't Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 879 (1990) (explaining that the Free Exercise Clause does not "make the professed doctrines of religious belief superior to the law of the land, and in effect to permit every citizen to become a law unto himself") (quoting *Reynolds v. United States*, 98 U.S. 145, 166-67 (1878)). Moreover, the implications that potentially follow from Plaintiff's alleged religious beliefs—for instance, as Defendant asserts, that she cannot consume any over-the-counter medications without violating her alleged beliefs . . . —might bear on the sincerity of those beliefs at a later stage in this litigation. *See Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008) (explaining that, in the Free Exercise context, courts may permissibly gauge the sincerity of a religious belief but not the "centrality" of the belief).

> At the motion to dismiss stage, however, current Ninth Circuit case law— as reflected in *Bolden-Hardge*, [*Doe v. San Diego Unified School District*, 19 F.4th 1173 (9th Cir. 2021)], and *Keene*—prohibits courts from dismissing a prima facie claim based solely on the "fungibility" of a plaintiff's religious beliefs. . . . And Defendant has not challenged the sincerity of Plaintiff's beliefs at this stage. Thus, this Court cannot now dismiss Plaintiff's claims based on "fungibility." But nothing in this Opinion should be construed as lowering the ultimate burden Plaintiff bears to prove her case. *Cf. United States v. Christie*, 825 F.3d 1048, 1055-56 (9th Cir. 2016) (explaining that to invoke the Religious Freedom Restoration Act, which protects the "exercise of religion," plaintiffs must "establish a prima facie case" including "that they sincerely hold [religious] beliefs, and do not simply recite them for the purpose of draping religious garb over" secular activities).

> In sum, Defendant's contention that Plaintiff has failed to allege a prima facie case under Title VII must fail under current Ninth Circuit case law. The First Amended Complaint therefore survives Defendant's Rule 12(b)(6) challenge.

*Id.* (simplified); *see also Guillen Parrish v. Shriners Hosps. for Child.*, No. 3:24-cv-00013-JR, 2024 WL 3688869, at *1 (D. Or. Aug. 7, 2024) (Immergut, J.) ("At the Motion to Dismiss stage, this Court has . . . previously rejected arguments regarding the 'fungibility' of certain religious beliefs.").

This Court agrees with the assigned district judge's observations in *Gamon* on Ninth Circuit case law and a court's inability to dismiss at the pleading stage religious discrimination claims based on the purported fungibility of a plaintiff's beliefs. In *Bolden-Hardge*, the Ninth Circuit noted that "[t]he Supreme Court has, albeit in the free exercise context, cautioned against second-guessing the reasonableness of an individual's assertion that a requirement burdens her religious beliefs, emphasizing that a court's 'narrow function . . . in this context is to determine whether the line drawn reflects an honest conviction.'" 63 F.4th at 1223 (quoting *Burwell*, 573 U.S.at 725, which quoted *Thomas*, 450 U.S. at 716). Thus, the Ninth Circuit did "not interrogate the reasonableness of [the plaintiff's] beliefs [at the pleading stage] and instead focus[ed] [its] inquiry on whether [the plaintiff] ha[d] alleged an actual conflict [her beliefs and employment requirement]." *Id.*

Similarly, in *Doe*, a case involving a student vaccination mandate and emergency motion for an injunction pending appeal, the Ninth Circuit emphasized at the outset that it did not and could not question the legitimacy of the plaintiff's abortion-related religious beliefs regarding COVID-19 vaccinations: "Jill Doe explains that her Christian faith prevents her from using any vaccines that depend on use of fetal cell lines at any stage of their development. We may not and do not question the legitimacy of Jill Doe's religious beliefs regarding COVID-19 vaccinations." 19 F.4th at 1176 n.3 (citing *Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rights Comm'n*, 584 U.S. 617, 637-38 (2018)).

PAGE 20 – FINDINGS AND RECOMMENDATION

In *Keene*, a case involving an employment vaccination requirement and motion for preliminary injunction, the Ninth Circuit made comparable observations regarding Title VII law:

> [The district court's] decision reflects a misunderstanding of Title VII law. A religious belief need not be consistent or rational to be protected under Title VII, and an assertion of a sincere religious belief is generally accepted. *Thomas*, 450 U.S. at 714 ("[T]he resolution of [whether a belief is religious] is not to turn upon a judicial perception of the particular belief or practice in question; religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection."); *Doe*, 19 F.4th at 1176 n.3 ("We may not . . . question the legitimacy of [Appellants'] religious beliefs regarding COVID-19 vaccinations." (citing *Masterpiece Cakeshop*, 584 U.S. at 637-38); EEOC Guidance, § 12-I(A)(2) ("[T]he sincerity of an employee's stated religious belief is usually not in dispute and is generally presumed or easily established." (cleaned up)).
>
> The district court did not explain its conclusion that Appellants had not established sincerity beyond stating that there are "no grounds upon which to assert the mistaken conclusion that the FDA-approved vaccines are derived from murdered babies" and generally stating that personal preferences are not sincere religious beliefs. And [the Appellee] offered no argument or evidence that Appellants' beliefs are insincere. Absent any indication otherwise, it seems that the district court erroneously held that Appellants had not asserted sincere religious beliefs because their beliefs were not scientifically accurate. Remand is warranted for the district court to reevaluate Appellants' claims applying the proper failure-to-accommodate inquiry.

2023 WL 3451687, at *2 (simplified).

These decisions demonstrate that regardless of whether the "practical inevitability" of using products derived from, or connected to, aborted fetal cell lines is not subject to reasonable dispute and judicially noticeable, it would be improper for the Court to dismiss at the pleading stage Trinh's religious discrimination claims based on the purported fungibility of her objections to SHC's vaccine mandate.[6] Simply put, the Court "may not and do[es] not question the

---

[6] The Court rejects SHC's argument that Trinh conceded or waived SHC's fungibility argument by failing adequately to address SHC's "overarching reasoning." (*See* Def.'s Reply at 6-7.) SHC acknowledges that Trinh responded by citing cases in support of the sufficiency of her theory. (*Id.*) Nothing more was required to preserve Trinh's opposition. The Court also notes that both parties could have but did not direct the Court to the assigned district judge's decision in *Gamon*.

PAGE 21 – FINDINGS AND RECOMMENDATION

legitimacy of [Trinh's] religious beliefs regarding COVID-19 vaccinations," *Doe*, 19 F.4th at 1176 n.3; the Court does "not interrogate the reasonableness of [Trinh's] beliefs [at the pleading stage]," *Bolden-Hardge*, 63 F.4th at 1223; and Trinh's religious beliefs need not be "consistent or rational," "acceptable, logical, consistent, or comprehensible," or "scientifically [or factually] accurate" to be sincerely held and entitled to protection under Title VII. *Keene*, 2023 WL 3451687, at *2.

Even if the Court were to consider SHC's publications, the Court's conclusion would be the same on the current record. SHC frames its fungibility argument as (1) dependent on the degree to which Trinh's employment duty and abortions are connected, and (2) implicating the sincerity of Trinh's beliefs. (*See, e.g.*, Def.'s Mot. at 22, arguing that the "connection between the COVID-19 vaccines and abortion (the source of . . . Trinh's objection . . . ) is exceedingly attenuated and, *if heeded*, would give . . . Trinh the practical ability to avoid any 'unwanted legal obligations,'" Trinh would be able to advance "similarly attenuated objections" in other hypothetical situations, and objections that are "fungible enough to cover anything [a plaintiff] trains it on . . . [are] insufficient, as a matter of law, to form a *sincerely* held religious belief protected under Title VII [and state law]") (emphasis added) (simplified). SHC, however, fails to present any case-specific material demonstrating that Trinh's religious beliefs are insincere.

In cases the Ninth Circuit has cited with approval in the Title VII context, the Supreme Court rejected arguments comparable to the one SHC makes here. For example, in *Burwell*, the Supreme Court addressed whether the Religious Freedom Restoration Act of 1993 ("RFRA") permitted the U.S. Department of Health and Human Services ("HHS") to "demand that three closely held corporations provide health-insurance coverage for methods of contraception that violate the sincerely held religious beliefs of the companies' owners." 573 U.S. at 688. The

parties disputed whether the HHS mandate imposed a substantial burden on the exercise of

religion. *Id.* at 723. In claiming that the mandate did not do so, "HHS's main argument . . . [was]

basically that the connection between what the objecting parties must do (provide . . . coverage

for . . . contraception that may operate after the fertilization of an egg) and the end that they

f[ou]nd to be morally wrong (destruction of an embryo) [was] simply too attenuated." *Id.* After

emphasizing that it has "repeatedly refused" to "in effect tell . . . plaintiffs that their [religious]

beliefs are flawed," the Supreme Court noted that it considered and rejected a nearly identical

argument in *Thomas*:

> [I]n *Thomas*, we considered and rejected an argument that is nearly identical to
> the one now urged by HHS and the dissent. In *Thomas*, a Jehovah's Witness was
> initially employed making sheet steel for a variety of industrial uses, but he was
> later transferred to a job making turrets for tanks. 450 U.S. at 710. Because he
> objected on religious grounds to participating in the manufacture of weapons, he
> lost his job and sought unemployment compensation. Ruling against the
> employee, the state court had difficulty with the line that the employee drew
> between work that he found to be consistent with his religious beliefs (helping to
> manufacture steel that was used in making weapons) and work that he found
> morally objectionable (helping to make the weapons themselves). This Court,
> however, held that "it is not for us to say that the line he drew was an
> unreasonable one." *Id.* at 715.
>
> Similarly, in these cases, the Hahns and Greens and their companies
> sincerely believe that providing the insurance coverage demanded by the HHS
> regulations lies on the forbidden side of the line, and it is not for us to say that
> their religious beliefs are mistaken or insubstantial. Instead, our "narrow
> function . . . in this context is to determine" whether the line drawn reflects "an
> honest conviction," *id.* at 716, and there is no dispute that it does.

*Id.* at 724-25 (footnote omitted).

Similar to *Burwell* and *Thomas*, Trinh alleges and argues that she sincerely believed that

complying with SHC's vaccine mandate fell on the forbidden side of the line. (*See* Second Am.

Compl. ¶ 11, reflecting that Trinh sought a religious exemption from SHC's vaccine mandate,

and explained that she was doing so based on Buddhist beliefs and precepts pertaining to

abortion and "no killings" and precluding the "use [of] any product that takes its origin in

abortion"). It is not for this Court to say that Trinh's religious beliefs are mistaken or

insubstantial. Rather, the Court's "narrow function . . . is to determine whether the line drawn

reflects an honest conviction." *Bolden-Hardge*, 63 F.4th at 1223 (quoting *Burwell*, 573 U.S. at

725). The record at this stage does not cast doubt on whether it did, and it is not for the Court to

say that the line Trinh "drew was an unreasonable one." *Burwell*, 573 U.S. at 725 (quoting

*Thomas*, 450 U.S. at 715).

Accepting SHC's assertion that it is generally and "practical[ly] inevitabl[e]" that

individuals who are not "completely off grid" will use products derived from, or connected to,

aborted fetal cell lines (Def.'s Mot. at 24), nothing before the Court casts doubt on the honesty of

Trinh's convictions or even addresses the extent to which Trinh does or does not avoid certain

products or may be aware of potential connections outside of the COVID-19 vaccine context.

For all of these reasons, the Court grants in part and denies in part SHC's request to take

judicial notice of its nineteen publications. The Court takes judicial notice of "the fact of

publication," *Packsys*, 899 F.3d at 1087 n.2, and "what was in the public realm at the time, [but]

not whether the contents of [the nineteen publications are] in fact true." *Von Saher*, 592 F.3d at

960.

Regardless of whether SHC's publications are judicially noticeable to the extent claimed,

they do not support rejecting Trinh's allegations. *See Health Freedom*, 104 F.4th at 721 n.2

(granting in part a request for judicial notice but declining to "take judicial notice of the truth of

the claims made in [vaccine mandate-related] written or oral statements"); *id.* at 725 (accepting

as true allegations that vaccines do "not prevent the spread of COVID-19," stating that "even if

the materials offered . . . [were] subject to judicial notice, they d[id] not support rejecting [the]

[p]laintiffs' allegations," and adding that the defendant "only provide[d] a CDC publication that

sa[id] 'COVID-19 vaccines are safe and effective[,]' . . . but d[id] not adduce judicially noticeable facts that prove[d]" what it implied, namely, that vaccines are "'safe and effective[]' . . . for preventing transmission of COVID-19"). Thus, the Court declines to convert the relevant portion of SHC's Rule 12(b)(6) motion into a Rule 56 motion because it would not facilitate the disposition of this action. *See* 5C Charles Alan Wright et al., *Federal Practice and Procedure* § 1366 (3d ed. June 2024 update) (recognizing that "federal courts have complete discretion" in this area, the exercise of this discretion "generally will" turn on "whether or not the proffered material, and the resulting conversion . . . , is likely to facilitate the disposition of the action," and "[w]hen extra-pleading material . . . is . . . inconclusive, the district court probably will reject it").

### 2.    Facial Plausibility

SHC suggests that Trinh's allegations, on their face, are insufficient to state a plausible religious discrimination claim. SHC, for example, argues that "[t]he law requires . . . Trinh to plead more than . . . a single statement alleging opposition to abortion[,] courts have dismissed similar complaints under analogous circumstances," and "Trinh does allege her opposition to abortion, but a stated religious opposition to abortion does not sufficiently support—for purposes of stating a Title VII claim—an opposition to a vaccine that was at one point tested on a line of aborted fetal cells." (Def.'s Mot. at 1-2, 21.) As explained below, the Court finds that Trinh's allegations are sufficient to state a religious discrimination claim.

Disputing the facial plausibility of Trinh's claims, SHC argues that a plaintiff's "repeated references to one's faith . . . are not sufficient to disguise a non-religious belief as religious for purposes of stating a Title VII claim." (Def.'s Mot. at 19; Def.'s Reply at 4) (emphasis omitted). SHC also argues that "[t]his principle remains true even where one references both one's faith *and* one's opposition to abortion," and thus "[t]he fact that . . . Trinh both names her religion and

identifies an opposition to abortion are not sufficient to render her objections religious or otherwise disguise that those objections are rooted in unprotected concerns about safety and bodily integrity." (Def.'s Mot. at 19; Def.'s Reply at 4.) The Court finds these arguments unpersuasive.

SHC's arguments, such as "a stated religious opposition to abortion does not sufficiently support—for purposes of stating a Title VII claim—an opposition to a vaccine that was at one point tested on a line of aborted fetal cells," are based in large part on a decision from the District of Minnesota. (*See* Def.'s Mot. at 19, 21; Def.'s Reply at 4-5, citing, quoting, and describing the case). The district court's decision was pending on appeal before the Eighth Circuit when the parties here completed their briefing on SHC's motion, and after they did so, the Eighth Circuit reversed. *See Kiel v. Mayo Clinic Health Sys. Se. Minn.*, 685 F. Supp. 3d 770 (D. Minn. 2023), *rev'd and remanded sub nom. Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894 (8th Cir. 2024).

The Eighth Circuit's decision does not support dismissing Trinh's claim under Rule 12(b)(6). On appeal, the plaintiffs "challenge[d] the district court's holding that they failed to plausibly plead their Title VII failure-to-accommodate claims." *Ringhofer*, 102 F.4th at 900. The plaintiffs who "were denied vaccination accommodations and fired for not taking the vaccine" argued that "their Christian religious beliefs prevent[ed] them from taking the Covid-19 vaccine."[7] *Id.* at 900-01. In arguing that their religious beliefs conflicted with their employers'

---

[7] Two of the *Ringhofer* plaintiffs (Rubin and Ihde) received exemptions from the vaccine mandate but did not receive exemptions from a weekly testing requirement. 102 F.4th at 902. The defendants fired these plaintiffs after they refused to submit to weekly testing. *Id.* The other *Ringhofer* plaintiffs (Kiel, Ringhofer, and Miller) did not receive exemptions from the vaccine mandate. *Id.* at 901-02. The district court did not rule on whether Miller and Ihde plausibly alleged Title VII claims because it dismissed their claims on the ground that they failed to exhaust their administrative remedies. *Id.* at 900. Given its holding that the district court erred in

vaccine mandate, the plaintiffs "invoke[d] two principles . . . (1) their 'body is a temple,' and

thus they shall not inject it with impure or unknown substances, and (2) their anti-abortion

beliefs, rooted in their religion, prevent them from using a product developed with fetal cell

lines." *Id.* at 901.

The Eighth Circuit noted that "[t]he district court found that the plaintiffs failed to

adequately plead the first and second elements" of their Title VII claims; in other words, the

district court found that the plaintiffs failed adequately to allege that they (1)"ha[d] a bona fide

religious belief that conflict[ed] with an employment requirement," and (2) "informed employer

of this belief." *Id.* at 900-01 (simplified). In a footnote, the Eighth Circuit summarily rejected the

district court's findings regarding the second element, noting that the district court erred because

the plaintiffs at issue, "Kiel and Ringhofer[,] each submitted religious exemption requests[]

informing [their employer] of the alleged conflict between their beliefs and the Covid-19 policy."

*Id.* at 902 n.1.

With respect to the first element, the Eighth Circuit held that "[t]he district court [also]

erred in finding that the plaintiffs failed to adequately connect their refusal of the vaccine with

their religious beliefs." *Id.* at 901. Before turning to the plaintiffs' allegations, the Eighth Circuit

explained that in making a plausibility assessment under Rule 12(b)(6), courts should not only

accept as true allegations in the complaint and draw all reasonable inferences in the non-

movant's favor, but also read the "complaint . . . as a whole, not parse[] [it] piece by piece to

determine whether each allegation, in isolation, is plausible." *Id.* (quoting *Warmington v. Bd. of*

---

dismissing Miller's and Ihde's claims on this ground, the Eighth Circuit addressed Miller's and
Ihde's argument that they too alleged plausible Title VII claims. *Id.* at 902-03. In doing so, the
Eighth Circuit separately analyzed whether the vaccine exemption plaintiffs (Kiel, Ringhofer,
and Miller) and testing exemption plaintiffs (Rubin and Ihde) stated plausible Title VII claims.
*Id.* Most relevant here is the Eighth Circuit's analysis of the vaccine exemption plaintiffs' Title
VII claims.

*Regents of Univ. of Minn.*, 998 F.3d 789, 795-96 (8th Cir. 2021)). The Eighth Circuit also explained that "[a]t this early stage, when the complaints [were] read as a whole and the nonmoving party receive[d] the benefit of reasonable inferences, Kiel, Miller, and Ringhofer adequately identif[ied] religious views they believe[d] to conflict with taking the Covid-19 vaccine." *Id.*

In support of its holding, the Eight Circuit cited these portions of the three plaintiffs' complaints:

> • Kiel's complaint states that her "religious beliefs prevent her from putting into her body the Covid-19 vaccines . . . because they were all produced with or tested with cells from aborted human babies. Receiving the vaccine would make her a participant in the abortion that killed the unborn baby."
>
> • Miller's complaint states that her "religious exemption was based on opposition to the use of vaccines produced with or tested by aborted baby cells. Plaintiff Miller believes in the sanctity of life from conception until natural death. She lives her life according to her sincerely held religious beliefs. . . . She is Christian and has determined she cannot, consistent with her conscience, take the Covid-19 vaccine, and to do so would make her complicit in the killing of the unborn babies from whom the cells used in the vaccines came."
>
> • Ringhofer's complaint states that "his body is a Temple to the Holy Spirit and is strongly against abortion. Plaintiff Ringhofer believes the Vaccine Mandate violates his religious beliefs and conscience to take the Covid-19 vaccine because the vaccines were produced with or tested with fetal cell lines.
> Ringhofer . . . [believes] that 'Using the fetal cells in the development of it, knowing about it, is against my religion.'"

*Id.*

In light of these allegations, the Eighth Circuit held that the plaintiffs' claims were "sufficient to survive a motion to dismiss," because when the "complaints [were] read as a whole, the[] [plaintiffs] plausibly ple[d] religious beliefs that conflict[ed] with [their employers'] vaccine requirement." *Id.* at 902. By contrast, "[t]he district court did not 'consider the complaint as a whole,' instead focusing on specific parts of the complaints to rule the anti-vaccine beliefs 'personal' or 'medical.'" *Id.* at 901 (citation omitted). Notably, "[a]s EEOC Guidance says,

PAGE 28 – FINDINGS AND RECOMMENDATION

overlap between a religious and political view does not place it outside the scope of Title VII's religious protections, as long as the view is part of a comprehensive religious belief system." *Id.* (simplified).

The Eighth Circuit's decision in *Ringhofer* is consistent with decisions from this district. For example, in *Schafer v. Legacy Health*, No. 3:23-cv-01543-HZ, 2024 WL 1932544, at \*4 (D. Or. May 2, 2024), the district court declined to dismiss the plaintiff's Title VII claims because the court could "reasonably conclude from [the] [p]laintiff's exception request that [she] informed [the] [d]efendant that her Catholic faith and associated anti-abortion beliefs conflict[ed] with [the] [d]efendant's vaccine mandate." *Id.* The district court found unpersuasive the fact that the "[d]efendant pick[ed] apart [the] [p]laintiff's request, emphasizing specific subparts that [did] not, in isolation, articulate a bona fide religious conflict." *Id.*

Like *Schafer*, the district court in *Kather v. Asante Health Sys.*, No. 22-cv-01842-MC, 2023 WL 4865533, at \*4-5 (D. Or. July 28, 2023), held that the plaintiff "adequately alleged a sincerely held religious belief, the practice of which conflict[ed] with receiving a COVID-19 vaccine," as the plaintiff relied on her "'Christianity' and resistance to receiving a vaccine developed with fetal cell lines." *Id.* The district court also stated that a plaintiff's "overlapping secular and religious objections do not place a requested accommodation outside the scope of Title VII." *Id.* at \*3.

This Court has made observations comparable to those in *Ringhofer*, *Schafer*, and *Kather*. In its earlier opinion in this case, the Court explained that Trinh could potentially cure the deficiencies in her original complaint because, although Trinh's complaint included only general and conclusory allegations (and no specific invocation of anti-abortion beliefs), Trinh's vague reference to "tainting the purity of her body" may have been "predicated on religious beliefs."

See *Trinh v. Shriners Hosps. for Child.*, No. 3:22-cv-01999-SB, 2023 WL 7525228, at \*10-11 (D. Or. Oct. 23, 2023) (directing the parties to cases addressing objections to vaccines derived from, or even remotely connected to, aborted fetal cell lines (citing *Keene*, 2023 WL 3451687, at \*1-2 and *Kather*, 2023 WL 4865533, at \*4)), *findings and recommendation adopted*, 2023 WL 7521441, at \*1 (D. Or Nov. 13, 2023); *see also Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) (recognizing that a complaint must "include sufficient factual enhancement to cross the line between possibility and plausibility" (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014))).

In subsequent opinions, this Court has noted its previous recognition that in a vaccine mandate case, a plaintiff can state a bona fide religious belief that conflicts with an employment requirement by alleging Christian-based beliefs in the sanctity of life and opposition to taking a vaccine connected to, or derived even remotely from, aborted fetal cell lines. *See Welch v. Or. Health & Sci. Univ.*, No. 3:23-cv-01231-SB, 2024 WL 3106930, at \*14-15 (D. Or. May 17, 2024) (citing, *inter alia*, *Trinh*), *findings and recommendation adopted*, 2024 WL 3106838, at \*1 (D. Or. June 20, 2024). The assigned district judge has done the same. *See Guillen Parrish*, 2024 WL 3688869, at \*1 ("Parrish alleges that she could not take the COVID-19 vaccine because she cannot knowingly partake of a vaccine which is derived in any measure from the use of fetal cell lines derived from aborted fetuses and that doing so would make her complicit in the act of murder, however far removed and morally accountable to God. . . . This Court has previously recognized such allegations as sufficient under Title VII and O.R.S. 659A.030 at the Motion to Dismiss stage.") (simplified).

Consistent with *Schafer*, *Kather*, and *Ringhofer*, the Court has declined to "isolate statements for the purpose of evaluating whether they are or are 'not protected religious

beliefs,'" noted that "overlapping secular and religious objections [does] not place a requested accommodation outside the scope of Title VII," and cautioned against analyzing a plaintiff's vaccine exemption request at "too granular a level" and by improperly "focusing on isolated" statements without addressing a plaintiff's beliefs rooted in religion. *Welch*, 2024 WL 3106930, at *14-15 (citing *Shafer*, 2024 WL 1932544, at *4 and quoting *Kather*, 2023 WL 4865533, at *3).

The cases above support the conclusion that Trinh has plausibly alleged religious beliefs that conflicted with SHC's vaccine mandate. Trinh alleges that she submitted an exemption request on October 1, 2021. (Second Am. Compl. ¶ 11.) Quoting her exemption request, Trinh alleges that she informed SHC that (1) the "COVID vaccines include the current COVID-19 mRNA vaccines and the Janssen vaccine which are produced with aborted fetal cell lines," (2) the "Johnson & Johnson vaccine, the Janssen vaccine, uses retinal cells from a fetus that was aborted and treated in a lab [thereafter]," (3) the "Pfizer and Moderna vaccines test[ed] the mRNA on fetal cell lines from an aborted fetus cell," and (4) given her "belief as a spiritual being with a Buddhist worldview, [she] cannot use any product that takes its origin in abortion," as "[a]bortion is killing . . . [and] violates the first [Buddhist] precept of no killings[.]" (Second Am. Compl. ¶ 11.) Accepting these allegations as true, the Court finds that Trinh plausibly alleges a religious discrimination claim.

The Court finds unpersuasive SHC's arguments to contrary. The Eighth Circuit's reversal of *Kiel* (SHC's most analogous comparator case) undermines SHC's position. (*See* Def.'s Mot. at 19, 21; Def.'s Reply at 4-5.) SHC's arguments rely on the purported "root" of Trinh's opposition to SHC's vaccine mandate (i.e., Trinh's "health and safety concerns about the vaccines," "personal preference," "concerns over potential harm to her body," "medical and moral" beliefs,

etc.). (*See* Def.'s Mot. at 16-17, 20-21; *see also* Def.'s Reply at 2-3, 5, arguing that although "presented under the guise of religion" and "identif[ying] an opposition to abortion," Trinh's exemption request "overwhelmingly stemmed" and "overwhelmingly address[ed]" "nonreligious concerns"). In so arguing, SHC improperly isolates parts of, among other things, Trinh's complaint and exemption request. *See Ringhofer*, 102 F.4th at 901 (reversing and stating that "[t]he district court did not consider the complaint as a whole, instead focusing on specific parts of the complaints to rule the anti-vaccine beliefs personal or medical") (simplified).

SHC's arguments are also based, in part, on statements that Trinh made in the parties' interactive process correspondence, which are included in Trinh's EEOC file.[8] (*See* Def.'s Mot. at 16-17, 20, citing Benedict Decl. Ex. 1 at 4.) SHC notes that proper subjects of judicial notice include administrative records like Trinh's EEOC file. (*See* Def.'s Rely at 11; Def.'s Mot. at 20 n.11).

In *Plaskett v. Wormuth*, 18 F.4th 1072, 1082-84, 1084 n.6 (9th Cir. 2021), the Ninth Circuit evaluated a plaintiff's employment claims under Rule 12(b)(6), and in doing so, observed that "[j]udicially noticeable materials in the record further underscore[d]" a pleading deficiency.

---

[8] In its initial, standalone Rule 12(b)(6) motion, SHC argued the Court could consider the parties' interactive process correspondence under the incorporation by reference doctrine, and primarily with respect to SHC's defense that it "could not have reasonably accommodated [Trinh] without suffering an undue hardship as a matter of law." *Trinh*, 2023 WL 7525228, at *3-7. Rejecting SHC's arguments, the Court explained, among other things, that (1) SHC's undue hardship defense "turn[ed] on disputed issues of fact," (2) the Court could not rely on the parties' interactive process correspondence to "resolve factual disputes," (3) it was unclear "whether Trinh ever abandoned any initial objections to masks and testing between October 7, 2021 (the date of the last email) and October 18, 2021 (the date on which Trinh alleges that SHC terminated her employment)," and (4) "SHC relie[d] only on extrinsic evidence that the Court may not consider under the incorporation-by-reference doctrine, and as a consequence, the Court need not consider SHC's related arguments and authorities relevant to Trinh's *purported* refusal to wear a mask or submit to testing (i.e., an argument seemingly in conflict with the allegations in Trinh's complaint and inappropriate for resolution on this record and at this stage)." *Id.* at *4-7 (emphasis added).

*Id.* at 1084. In a footnote, the Ninth Circuit emphasized that it did "not take judicial notice of the truth of the factual assertions contained in the parties' correspondence with one another or with the EEOC, but only of the fact that [leading up to the filing of the action,] the parties ha[d] *made* [certain] . . . representations." *Id.* at 1084 n.6. The Ninth Circuit added that "[n]o party ha[d] disputed the authenticity of the documents, and neither side ha[d] objected to the requests for judicial notice made by the other." *Id.* (citing *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) and *Lee*, 250 F.3d at 688-90). The Ninth Circuit "also grant[ed] [the plaintiff's] request for judicial notice of certain materials from the administrative record." *Id.*

The parties do not appear to dispute the authenticity of their interactive process correspondence, but Trinh does object to SHC's requests for judicial notice. (*See* Pl.'s Resp. at 2, 5-8.) To the extent SHC asks the Court to take judicial notice that Trinh *made* certain statements in the parties' interactive process communications, and not the truth of the factual assertions contained therein, the Court overrules as moot Trinh's objections to SHC's requests. The Court does so because the communications' authenticity appears undisputed and taking judicial notice that Trinh *made* the statements upon which SHC relies does change the Court's conclusion (and recommendation to the district judge) as to the viability of Trinh's religious discrimination claims, as the Court must still consider the pleadings as a whole and draw all reasonable inferences in Trinh's favor.[9]

///

///

---

[9] On this record, conversion of SHC's motion would not alter the result or otherwise facilitate disposition of this action. The Court therefore declines to convert the subject portion of SHC's motion.

In sum, to the extent SHC challenges the facial plausibility of Trinh's allegations of religious discrimination, the Court recommends that the district judge deny Trinh's motion to dismiss.

### 3.    Undue Hardship

SHC argues that it is entitled to dismissal or summary judgment on Trinh's claims because it could not have reasonably accommodated Trinh's religious objection without undue hardship. (Def.'s Mot. at 2, 25-32.)

### a.    Applicable Law

Title VII "require[s] employers to accommodate [an employee's] religious beliefs unless doing so would impose an undue hardship." *Bolden-Hardge*, 63 F.4th at 1222 (citing 42 U.S.C. §§ 2000e-2(a)(1) and 2000e(j)). Thus, if "an employee establishes a prima facie case of failure to accommodate religion, the burden shifts to the employer to show 'either that it initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship.'" *Id.* at 1225 (quoting *Tiano*, 139 F.3d at 681).

As the Supreme Court recently clarified, "'undue hardship' is shown when a burden is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023). In other words, "an employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Id.* at 471 (citation omitted). In evaluating whether an employer has met its burden, a court must engage in a "fact-specific inquiry" and "context-specific application" of the law. *Id.* at 468, 473. The court "must apply the [clarified undue hardship standard] in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their

practical impact in light of the nature, size and operating cost of an employer." *Id.* at 470-71 (simplified).

Procedurally, a court's "dismissal on that ground [of undue hardship] is proper 'only if the defendant shows some obvious bar to securing relief on the face of the complaint' or in 'any judicially noticeable material.'" *Bolden-Hardge*, 63 F.4th at 1224-25 (citations omitted). "If, from the allegations of the complaint as well as any judicially noticeable materials, an asserted defense raises disputed issues of fact, [a court's] dismissal under Rule 12(b)(6) is improper." *ASARCO*, 765 F.3d at 1004 (citing *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (per curiam)).

### b.    Analysis

SHC argues that it was unable reasonably to accommodate Trinh without undue hardship, and therefore it is entitled to dismissal of or summary judgment on Trinh's claims. The Court disagrees.

SHC's undue hardship argument is twofold. (Def.'s Mot. at 2, 25-26.) First, SHC argues that during the relevant time period, "Oregon regulation[s] informed [SHC] that allowing . . . Trinh to continue working, directly interacting with pediatric patients while unvaccinated, would have created—as a matter of law—a substantial safety risk to [SHC's] employees, medically-vulnerable patients, and visitors[.]" (*Id.* at 25-26.) Second, SHC argues that Trinh's requested accommodation would have "forced [SHC] to violate both Oregon and federal regulations requiring it to minimize the spread of COVID-19." (*Id.* at 26.) The Court addresses these arguments in turn.

Relying on the undue hardship standard articulated in *Groff*, SHC argues that "[c]ourts have held that allowing an unvaccinated healthcare employee to continue working on-site would, *as a matter of law*, create an undue hardship for the employer in the form of an increased safety

risk—*irrespective of proposed alternative efforts, like increased testing or making*[.]" (Def.'s

Mot. at 26) (bold omitted and second emphasis added). By way of example, SHC highlights the

district court's decision in *Beuca v. Washington State University*, No. 2:23-cv-00069, 2023 WL

3575503, at *3 (E.D. Wash. May 19, 2023). (*See* Def.'s Mot. at 26-27; *see also* Def.'s Reply at

8, incorporating by reference Defendant's previous motion arguments and citing the *Beuca*

decision).

      After the parties completed their briefing, the Ninth Circuit reversed the district court's

*Beuca* decision. *See Beuca v. Wash. State Univ.*, No. 23-35395, 2024 WL 3450989, at *1-2 (9th

Cir. July 18, 2024). Notably, the Ninth Circuit held that the district court erred in finding that the

defendant "successfully established an undue hardship affirmative defense" at the pleading stage.

*Id.* at *1-2.

      In so holding, the Ninth Circuit explained that the district court "defined undue hardship

as 'more than a de minimis cost to the employer' and found that no accommodation was

possible," but "[a]fter the district court issued its decision, the Supreme Court clarified the undue

hardship standard under Title VII in *Groff*[.]" *Id.* at *1 (simplified). As the Ninth Circuit

recounted, *Groff* clarified that "an undue hardship is 'substantial in the overall context of an

employer's business[,]' . . . [and thus] a 'fact-specific inquiry' [is necessary] to determine

whether 'the burden of granting an accommodation would result in substantial increased costs in

relation to the conduct of its particular business.'" *Id.* (quoting *Groff*, 600 U.S. at 468, 470).

*Groff* added that "[c]ourts must 'apply the test in a manner that takes into account all relevant

factors in the case at hand, including the particular accommodations at issue and their practical

impact in light of the nature, size and operating cost of [an] employer.'" *Id.* (quoting *Groff*, 600

U.S. at 470-71).

Given *Groff*'s clarification of the undue hardship standard, the Ninth Circuit held that "the district court erred in applying the de minimis standard and in its related futility of amendment analysis." *Id.* at *2. The Ninth Circuit stated that "[o]n this record and at this stage, [it could not] take into account 'all relevant factors' as *Groff* requires, and, therefore, [could not] rule as a matter of law that [the plaintiff's accommodation] request constituted an undue hardship." *Id.*

SHC did not have the benefit of this decision in making its arguments. Nevertheless, it is noteworthy that the Ninth Circuit confirmed that the district court court's undue hardship analysis ran afoul of *Groff* (and understandably so, as the Supreme Court issued the decision after the district court). (*See* Def.'s Mot. at 27, arguing that district court in *Beuca* "did not rely on the 'more than *de minimis*' standard in the way proscribed by *Groff*" and instead found that "by virtue of allowing an unvaccinated employee to continue working with patients on-site *under any circumstances*—and thus given *any* accommodation—[an employer] would face an undue burden"). Other courts had previously made similar observations about *Beuca. See Quinn v. Legacy Health*, No. 3:23-cv-00331-JR, 2024 WL 620344, at *3-4 (D. Or. Feb. 13, 2024) (Nelson, J.) (reviewing the magistrate judge's findings and recommendation and "intervening precedential law" (*Groff*), noting that *Groff* "abandoned the *de minimis* rule adopted from [a past decision] and held that showing more than a *de minimis* cost does not suffice to establish undue hardship under Title VII," and citing *Beuca* as an example of "another, pre-*Groff* case[] [where] a court found that no accommodation was possible, meeting the *de minimis* standard")) (simplified); *Taylor v. Milford Reg'l Med. Ctr., Inc.*, No. 4:23-cv-40009, --- F. Supp. 3d ---- , 2024 WL 2111459, at *6 (D. Mass. May 10, 2024) (noting that the defendant "cited *Beuca*" and stating that "the law of that case [was] now outdated as it applied the more than de minimis

standard of undue hardship that was overruled by the Supreme Court in *Groff*" (simplified) (citing *Beuca*, 2023 WL 3575503, at \*2-3)).

In addition to the Ninth Circuit's decision and reversal in *Beuca*, the Court finds the district court's decision in *Malone v. Legacy Health*, No. 3:22-cv-01343-HZ, 2024 WL 3316167, at \*2 (D. Or. July 5, 2024), instructive on the law and as an illustration of deficient arguments and records in this Title VII context (i.e., vaccine mandates, undue hardship, and direct patient care roles).

In *Malone*, the summary judgment record demonstrated that the "[p]aintiff worked directly with patients as a respiratory therapist in one of [the] [d]efendant's trauma units," and the plaintiff's "job required both direct patient care and interpersonal interactions with patients and coworkers." *Id.* The defendant moved for summary judgment, arguing that "it could not have reasonably accommodated [the] [p]laintiff without undue hardship because she worked exclusively in a hospital setting in close contact with vulnerable patients and other staff." *Id.* Recognizing that the pandemic was "a time of crisis," the district court stated that "[it would] not second guess [the] [d]efendant's belief in the efficacy of the vaccine." *Id.* at \*3. Nevertheless, the district court found that when "viewing the facts in the light most favorable to [the] [p]laintiff, [the] [d]efendant ha[d] not demonstrated that no reasonable jury could find for [the] [p]laintiff." *Id.* at \*4.

In so holding, the district court observed that the defendant's evidence revealed that (1) "case numbers were increasing to historically high levels due to the delta variant at the time of the vaccine mandate," (2) "COVID-19 transmission was still occurring despite preventative measures," (3) "patient admissions were largely comprised of unvaccinated individuals," (4) "many patients were at such a heightened risk of infection that even some commonplace

items—such as fresh fruit or flowers—presented a significant risk," and (5) the defendant

"concluded that having unvaccinated individuals work in-person was too great a health and

safety risk, particularly given the hundreds of exception requests it received." *Id.* (citing the

defendant's summary judgment declaration and supporting exhibits). The district court, however,

explained that "absent from the record [was] any evidence that [the] [d]efendant made an

individualized inquiry into whether [the] [p]laintiff could be accommodated or what measures—

if any—they considered." *Id.* The district court further explained that *Groff* required such

consideration:

> Title VII requires that an employer reasonably accommodate an employee's
> practice of religion, not merely that it assesses the reasonableness of a particular
> accommodation or accommodations. . . . Faced with an accommodation request
> like [the plaintiff's], it would not be enough for an employer to conclude that
> forcing other employees to work overtime would constitute undue hardship.
> Consideration of other options . . . would also be necessary.

*Id.* (quoting *Groff*, 600 U.S. at 473).

Immediately thereafter, the district court stated that the "record [was] murky as to what

other safety precautions or positions existed at the time, what accommodations were considered

for [the] [p]laintiff, and why those would be an undue hardship on [the] [d]efendant's business."

*Id.* The district court noted that the "[p]laintiff, for example, specifically identifie[d] additional

testing as one safety measure, . . . but the record [was] ambiguous as to whether this was a

protocol that was considered by [the] [d]efendant, in use at the time of the vaccine mandate, and

why it would not be sufficient." *Id.* In light of these issues, the district court held that "[a]

reasonable jury could find that accommodating [the] [p]laintiff was not [a] substantial burden in

the context of [the] [d]efendant's business," and denied the defendant's summary judgment

motion. *Id.*

///

PAGE 39 – FINDINGS AND RECOMMENDATION

Like the defendant in *Malone*, SHC argues that it could not have accommodated Trinh without undue hardship because as an in-patient nurse at a children's hospital, Trinh worked in close contact with other staff, visitors, and "medically-vulnerable patients," including pediatric patients who "were not themselves eligible for vaccination and thus remained especially vulnerable to the virus." (Def.'s Mot. at 25-26, 29.) Like the district court in *Malone*, the Court finds unpersuasive SHC's undue hardship arguments, in part because the record is lacking in certain respects.

Trinh alleges that her "role as an in-patient nurse . . . [involved] work[ing] directly with pediatric patients hospitalized with a variety of illnesses, injuries, and other medical conditions," and Trinh requested an accommodation that would allow her to remain unvaccinated and resume her normal patient care duties and responsibilities. (Second Am. Compl. ¶ 5; Benedict Decl. Ex. 1 at 2); *cf. Malone*, 2024 WL 3316167, at *2 (noting that "[p]laintiff worked directly with patients as a respiratory therapist in one of [the] [d]efendant's trauma units," and that the "[p]laintiff's job required both direct patient care and interpersonal interactions with patients and coworkers"). SHC in turn argues that (1) "Oregon regulation informed [SHC] that allowing . . . Trinh to continue working would have created—as a matter of law—a substantial safety risk to [SHC's] employees, medically-vulnerable patients, and visitors," (2) accommodating Trinh "would have undoubtedly resulted in substantially increased costs in relation to [SHC's] important work," (3) Oregon regulations made it "reasonable for [SHC] to determine that allowing an unvaccinated employee to continue working on-site in a healthcare setting in the fall of 2021 would therefore necessarily impose a substantial undue burden in the form an increased risk to the health and safety of others," and (4) "[n]o accommodation existed that would have allowed . . . Trinh to continue in her role without increasing the risk of COVID-

PAGE 40 – FINDINGS AND RECOMMENDATION

19 transmission and thus increasing the health and safety hazards to others occupying the hospital[.]" (Def.'s Mot. at 25-26, 29, 31 n.17.)

These arguments are just that—arguments, not evidence or facts drawn from any part of the pleadings. The Court has before it no evidence addressing what SHC previously determined with respect to applicable regulations or unvaccinated workers seeking an exemption, let alone an individualized assessment of Trinh's situation or any potential options. *See Malone*, 2024 WL 3316167, at *4 (denying the defendant's motion for summary judgment on its undue hardship defense and explaining that "absent from the record [was] any evidence that [the] [d]efendant made an individualized inquiry into whether [the] [p]laintiff could be accommodated or what measures—if any—they considered"). As with Trinh, the Court may take judicial notice that SHC's human resources representative made certain statements during the parties' written interactive process. *See Plaskett*, 18 F.4th at 1084 n.6 (noting that the Ninth Circuit did "not take judicial notice of the truth of the factual assertions contained in the parties' correspondence with one another or with the EEOC, but only of the fact that [leading up to the filing of the action,] the parties ha[d] *made* [certain] . . . representations"). But even if the Court takes judicial notice that SHC's representative made certain statements, none of those statements address whether SHC made any pre-discharge assessments after receiving Trinh's responses to the questions that SHC posed to "begin . . . the interactive accommodation process" and "review [Trinh's] . . . request for understanding," "looking ahead at possible next steps." (*See* Benedict Decl. Ex. 1 at 3-8.)

SHC notes as an aside that during the parties' interactive process, Trinh did "not even countenance[]" other health and safety measures "like increased testing or masking." (Def.'s Mot. at 26, presenting an argument "irrespective of proposed alternative" measures but stating as much and adding a related footnote). In support of its second undue hardship argument and

whether any reasonable accommodation existed, SHC similarly relies on its claim that during the parties' interactive process, Trinh "refus[ed] to practice other safety measures, including wearing an N-95 mask and regularly testing for COVID-19." (*Id.* at 31, citing Benedict Decl. Ex. 1 at 5; Def.'s Reply at 7-8, arguing that Trinh "refused" a "slew of potential alternative safety measures").

The Court declines to conclude the same here. Trinh made various statements in responding to SHC's questions initiating the interactive process and attempting to understand Trinh's exemption request. (Benedict Decl. Ex. 1 at 3, 5.) On the page that SHC cites, SHC's questions (1) asked Trinh to address a policy "recommend[ing] reasonable accommodations[,] includ[ing] but . . . not limited to wearing an SHC provided N-95 mask or respirator, and SHC paid for weekly COVID-19 testing," and whether "this [was] acceptable with [Trinh's] religious belie[fs]/needs," and (2) asked Trinh to identify "some and/or all potential reasonable accommodations," and the "strengths and weaknesses during interactive discussions." (*Id.* Ex. 1 at 5.)

In response, Trinh made statements, in list form, about what her beliefs prevented her from doing, including injecting a "biological substance . . . into [her] body," allowing herself to be "assaulted by a foreign body . . . inserting into [her] nasal passages" like "covid tests," and "put[ting] any type of mask, shield, or covering over [her] face[.]" (*Id.*) In addition, Trinh made statements about her "reason for not wanting to wear a N-95" mask. (*Id.*) Importantly, however, Trinh also made statements about how she had "been compliant wearing a medical grade mask and eyewear at work because [she] want[ed] to respect [her] patients and coworkers," she wanted to resume providing direct patient care, she would "continue to fill out the standard COVID screening prior to entering the hospital," she would "not come into work and get tested for

COVID-19 per CDC recommendation" if she was "ill or exposed to someone with COVID-19," and she would "gladly wear protect[ive] eyewear and not a N95 mask provided by the hospital." (*Id.*)

In her exemption request, Trinh made similar statements about not wanting to "[w]ear[] a N95 mask" and how she had "complied with wearing a regular medical grade mask during th[e] pandemic and [would] continue to wear [it] while working in the hospital." (*Id.* Ex. 1 at 2.) Trinh also made statements about how her accommodation request included that she "only [undergo] COVID nasal swab testing if [she] ha[d] COVID symptoms." (*Id.*) Furthermore, in her operative complaint and with respect to potentially available accommodations, Trinh alleges that SHC could "have allowed [her] to continue working with [personal protective equipment], regular testing, and other measures to protect against the spread of COVID-19[.]" (Second Am. Compl. ¶¶ 18, 22, 27.)

At best for SHC, Trinh made some potentially ambiguous statements about what she would do. Nothing in the record addresses SHC's subsequent review, understanding, or assessment of Trinh's exemption request and statements and how SHC arrived at its decision to terminate Trinh. Arguably, Trinh made statements suggesting that she remained amenable to COVID-19 testing, wearing a medical grade mask and protective eyewear, and taking measures to avoid spreading the virus. It is unclear to the Court whether and to what extent any SHC policy on reasonable accommodations, such as a systems-wide policy on, but not limited to, N-95 masks or respirators and employer-covered COVID-19 testing, embraced measures that Trinh referenced.

Without abandoning its assertion that Trinh "does not dispute the[] fact[]" that she refused "a slew of potential alternative safety measures (including weekly, paid-for testing and

wearing an N95 mask),” SHC acknowledges Trinh’s undue hardship allegations and aspects of the proposals Trinh “proffered” in response to SHC’s questions. (*See* Def.’s Reply at 8 & n.2; Def.’s Mot. at 26 n.16.) Regarding Trinh’s allegations, SHC emphasizes what Trinh “does not allege,” namely, that “*she would have agreed to comply* with [the] measures” identified in her operative pleading. (*Id.*, citing generally to the entirety of the operative pleading). SHC then adds that Trinh “proffered only” that she would continue to provide direct patient care in the same manner, fill out screening forms, and wear protective eyewear but not an employer-provided N-95 mask. (*Id.*)

Contrary to SHC’s arguments, it is reasonable to infer from Trinh’s allegations that she would have agreed to comply with the measures identified in her complaint. The statements that Trinh made during the interactive process were not so limited and do not compel a different result.

At bottom, the Court cannot (and does not) find that Trinh “refused . . . a slew of potential alternative safety measures (including weekly, paid-for testing and wearing an N95 mask).” (Def.’s Reply at 8.) The Rule 12(b)(6) and Rule 56 standards do not permit such a finding, nor would judicial notice or the incorporation by reference doctrine.[10] *See generally Ariz. Students’ Ass’n v. Ariz. Bd. of Regents*, 824 F.3d 858, 864 (9th Cir. 2016) (recognizing that under Rule 12(b)(6), a court “must accept the complaint’s well-pleaded factual allegations as true, and construe all inferences in the plaintiff’s favor”); *Porter*, 419 F.3d at 891 (noting that under Rule 56, a “court must examine all the evidence in the light most favorable to the non-moving party”); *Khoja*, 899 F.3d at 999-1000, 1003 (explaining that a district court cannot take judicial notice of disputed facts or matters that are subject to varying interpretations or

_____

[10] As a result, the Court finds it unnecessary to convert the remainder of SHC’s motion.

reasonable disputes as to what they establish, and that "what inferences a [district] court may draw from an incorporated document should . . . be approached with caution").

The only remaining issue to address is SHC's now-limited second undue hardship argument, which concerns whether SHC could have accommodated Trinh without violating "regulations requiring healthcare employers ensure that they minimize the spread of COVID-19." (Def.'s Mot. at 2.) As reflected in its motion, this portion of SHC's argument and undue hardship defense is based on OAR 333-019-1010(4), and how "[i]rrespective of any other precautionary measures, the regulation informed [SHC] that being vaccinated against COVID-19 is the gold standard in preventing transmission of the disease." (*Id.*) The record does not support SHC's argument.

OAR 333-019-1010(4) provided that healthcare employers "who grant[ed] a medical or religious exception to the vaccination requirement in this rule must take reasonable steps to ensure that unvaccinated healthcare providers and healthcare staff are protected from contracting and spreading COVID-19." *Brown*, 2023 WL 6147178, at *3-4 (quoting OR. ADMIN. R. 333-019-1010(4)). The current record does not reflect how any regulation informed or influenced SHC's decisions or actions, or support that SHC satisfied its burden of demonstrating undue hardship. The Court therefore recommends that the district judge deny SHC's motion. *See MacDonald v. Or. Health & Sci. Univ.*, 689 F. Supp. 3d 906, 918 (D. Or. 2023) (addressing a comparable argument about the same regulation and explaining that the "[d]efendants ha[d] not shown at th[at] stage [of the case] that affording [the] [p]laintiff an accommodation would have put [the] [d]efendants out of compliance with Oregon law," and that "without extrinsic evidence that no reasonable steps were available to ensure that unvaccinated healthcare providers and healthcare staff were protected from contracting and spreading COVID-19, [the district judge

could not] find at th[at] stage [of the case] that granting [the] [p]laintiff a religious accommodation would have automatically placed [the] [d]efendants out of compliance with state law").[11]

## CONCLUSION

For the reasons stated, the Court recommends that the district judge DENY SHC's motion to dismiss or, alternatively, for motion for summary judgment (ECF No. 25).

## SCHEDULING ORDER

The Court will refer its Findings and Recommendation to a district judge. Objections, if any, are due within fourteen (14) days. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within fourteen (14) days. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 9th day of August, 2024.

_HON. STACIE F. BECKERMAN_
United States Magistrate Judge

---

[11] The assigned district judge recently granted the *MacDonald* defendant's motion for summary judgment on its undue hardship defense. *See MacDonald v. Or. Health & Sci. Univ.*, No. 3:22-cv-01942-IM, 2024 WL 3316199, at *1-14 (D. Or. July 5, 2024). The district judge did so with the benefit of a far more developed record, which bears no resemblance to the current record here. *See id.* at *8-14 (describing the evidence adduced on summary judgment, which included declarations from medical providers who served as a chief medical officer, medical director, and director of nursing services, and an expert report from a physician with "nearly 15 years in epidemiology, internal medicine, and infectious disease" and "expertise . . . focused on the science, spread, mitigation, and treatment of infectious diseases, including . . . COVID-19").

PAGE 46 – FINDINGS AND RECOMMENDATION