IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HUONG TRINH,

                Plaintiff,

      v.

SHRINERS HOSPITALS FOR CHILDREN, a
corporation,

                Defendant.

Case No. 3:22-cv-01999-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

       Huong Trinh ("Trinh") filed this employment action against Shriners Hospitals for

Children ("SHC"), asserting religious discrimination claims under Title VII of the Civil Rights

Act ("Title VII") and Oregon Revised Statutes ("ORS") § 659A.030. On June 20, 2025, the

parties stipulated to the dismissal of Trinh's case pursuant to Federal Rule of Civil Procedure

("Rule") 41(a)(1)(A)(ii). As the parties contemplated, SHC then filed its pending motion for an

award of attorney's fees pursuant the Court's May 30, 2025 Discovery Order.[1] (*See* Stipulated

---

[1] "The Supreme Court has held 'that motions for costs or attorney's fees are independent
proceeding[s] supplemental to the original proceeding,' and may survive the termination of a
suit." *Brinker v. Narmandin's*, No. 14-cv-03007, 2017 WL 713554, at *1 n.1 (N.D. Cal. Feb. 23,
2017) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990)). In so holding, the

Notice Dismissal at 1, ECF No. 65, reporting that the parties agreed that their "dismissal shall not affect the Court's authority to enforce the monetary sanctions against [Trinh's] counsel, which [the Court] previously ordered pursuant to [Rule] 37"). For the reasons explained below, the Court grants in part and denies in part SHC's motion for attorney's fees, and awards SHC $43,099.30.[2]

## BACKGROUND

On May 30, 2025, the Court issued an Order addressing SHC's motion to compel discovery responses. (Discovery Order at 1-7, ECF No. 64.) In its Discovery Order, the Court explained that SHC previously served Trinh with discovery requests, including requests for production of documents, interrogatories, and requests for admission, on December 19, 2024. (*Id.* at 2.) Having identified deficiencies in Trinh's initial and supplemental responses, SHC unsuccessfully attempted multiple times to confer with Trinh's counsel, who failed to respond to

---

Supreme Court explained that "[l]ike the imposition of costs, attorney's fees, and contempt sanctions, the imposition of a Rule 11 sanction is not a judgment on the merits of an action[;] [r]ather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." *Id.* (quoting *Cooter & Gell*, 496 U.S. at 395). The Ninth Circuit has "applied this reasoning to other statutory fee provisions beyond Rule 11," *id.* (citing *Moore v. Permanente Med. Grp., Inc.*, 981 F.2d 443, 445 (9th Cir. 1992)), and courts in this circuit have found "no reason why it should not apply [in the Rule 37 context]." *See, e.g.*, *id.* at *1 & n.1 (finding no such reason and noting that the district judge's dismissal without prejudice did not "excuse" the defendant's "disobedience of a discovery order or terminate the [magistrate judge's] ability to rule on [the plaintiff's Rule 37] motion" for attorney's fees).

[2] "Although the parties have not consented to allow a magistrate judge to enter final orders and judgment in this case in accordance with [Rule] 73 and 28 U.S.C. § 636(c), this Court has the authority to decide a request for attorneys' fees [and expenses where, as here, it] aris[es] out of a distinct pretrial event, such as attorneys' fees arising out of a discovery dispute." *Meyers v. Highlands at Vista Ridge Homeowners Ass'n, Inc.*, No. 6:20-cv-00562-MK, 2021 WL 5985164, at *1 n.1 (D. Or. Dec. 16, 2021) (simplified) (citing *Grimes v. City & Cnty. of S.F.*, 951 F.2d 236, 240 (9th Cir. 1991)); *see also Balcom v. Peterson*, No. 3:23-cv-00528-SB, 2025 WL 1146900, at *1 n.1 (D. Or. Apr. 18, 2025) (making the same observation).

SHC's emails dated February 24 and March 4, 2025 and call and voicemail on March 11, 2025. (*Id.*)

Consequently, SHC's counsel moved to compel further discovery responses and identified several deficiencies in Trinh's responses to its first set of discovery requests. (*Id.* at 2-3.) Trinh's counsel responded with a less than two-page filing in which he failed to address any of the alleged deficiencies that SHC identified. (*Id.* at 3.) Instead, Trinh's counsel argued that he had already responded to SHC's discovery requests and intended to produce additional documents. (*Id.*) As SHC subsequently reported, however, Trinh's counsel failed timely to remedy the deficiencies in his discovery responses, necessitating the Court's intervention. (*Id.*) (simplified).

The Court granted SHC's motion to compel in its entirety. (*Id.* at 4.) The Court explained that Trinh's counsel failed to respond to (and therefore waived) any opposition to SHC's claims regarding his deficient discovery responses. (*Id.* at 3-4.) The Court also explained that because Trinh's counsel failed to provide discovery within Rule 26(b)(1)'s scope and the Court granted SHC's motion to compel in its entirety, the Court "must" require the party or attorney "whose conduct necessitated the motion" to compel to "pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." (*Id.*, first quoting FED. R. CIV. P. 37(a)(5)(A); and then citing *Saul v. St. Charles Health Sys., Inc.*, No. 6:23-cv-01045-MK, 2024 WL 4542293, at *2 (D. Or. Oct. 22, 2024)); *see also Saul*, 2024 WL 4542293, at *2 ("Rule 37(c)(1) authorizes district courts to impose monetary sanctions for unjustified and harmful discovery failures. District courts have particularly wide latitude to exercise their discretion in issuing sanctions under Rule 37(c)(1)." (citing *R&R Sails, Inc. v. Ins Co. of Pa.*, 673 F.3d 1240, 1245 (9th Cir. 2012))).

PAGE 3 – OPINION AND ORDER

Consistent with these authorities, the Court ordered payment of SHC's reasonable expenses, including attorney's fees and costs, incurred in (1) "its unanswered conferral efforts," and (2) "litigating the motion to compel." (*See id.* at 4, ordering the "payment of SHC's reasonable expenses, including attorney's fees and costs, incurred in its unanswered conferral efforts and in litigating the motion to compel" (citing *Saul*, 2024 WL 4542293, at *2)); *see also Saul*, 2024 WL 4542293, at *2 (granting a different defendant health system's request for reasonable attorney's fees and costs incurred in filing a motion to compel in a similar case that Trinh's counsel filed in this district). The Court also ordered Trinh's counsel (not Trinh) to pay the court-ordered discovery sanction given that it stemmed from Trinh's counsel's failure to respond to conferral efforts, failure to supplement discovery responses, and failure meaningfully to respond to SHC's motion to compel. (*Id.*, first citing *Gamon v. Shriners Hosps. for Child.*, No. 3:23-cv-00216-IM, 2025 WL 415062, at *3 (D. Or. Feb. 6, 2025); and then citing *Matthews v. Legacy Health*, No. 6:24-cv-00592-MC, 2025 WL 914411, at *4 (D. Or. Mar. 26, 2025).)

The Court also ordered SHC to provide Trinh's counsel with its itemized attorney's fees and costs by June 13, 2025, and the parties to confer on an appropriate award and submit any stipulated amount for the Court's approval. (*Id.* at 6.) The Court further ordered SHC to file an application for attorney's fees and costs if the parties could not agree on an appropriate award or Trinh's counsel failed to respond to SHC's first attempt to confer within three business days. (*Id.*)

On June 20, 2025, three weeks after the Court issued its Discovery Order, Trinh's counsel filed the parties' signed stipulation of dismissal pursuant to Rule 41(a)(1)(A)(ii), advising that the parties "agree[d] that th[e] stipulated dismissal [did] not affect the Court's authority to enforce the monetary sanctions against [Trinh's] counsel, which [the Court]

previously ordered pursuant to [Rule] 37[.]" (Stipulated Notice Dismissal at 1, citing Discovery

Order at 1-7.) SHC's pending motion for attorney's fees followed on July 7, 2022. (*See* Def.'s

Appl. Att'y Fees ("Def.'s Appl.") at 1-12, ECF No. 67, seeking an award of SHC's "reasonable"

attorney's fees).

## DISCUSSION

SHC seeks an award of $55,707.00 in attorney's fees "resulting from" (1) Trinh's

counsel's "significant discovery transgressions leading to [SHC's] [m]otion to [c]ompel,"

(2) Trinh's counsel's "failure to comply" with the Court's May 30, 2025 Discovery Order, and

(3) SHC's preparation of its pending fee motion.[3] (*Id.* at 2, 11.) As explained below, the Court

grants in part and denies in part SHC's motion for attorney's fees, and awards SHC $43,099.30.

## I.    APPLICABLE LAW

"Once a party is found eligible for fees, the district court must then determine what fees

are reasonable[.]" *Roberts v. City of Honolulu*, 938 F.3d 1020, 1024 (9th Cir. 2019) (quoting

*Klein v. City of Laguna Beach*, 810 F.3d 693, 698 (9th Cir. 2016)). District "[c]ourts begin the

analysis by applying the lodestar method."[4] *Id.* (citing *Bravo v. City of Santa Maria*, 810 F.3d

---

[3] SHC represents that Trinh's counsel violated the Court's Discovery Order by failing timely to supplement Trinh's discovery responses (i.e., June 14 instead of the Court's June 13, 2025 deadline) and failing adequately to respond to SHC's discovery requests. (Decl. Christopher Byer Supp. Def.'s Appl. Att'y Fees ("Byer Decl.") ¶¶ 6-7 & Ex. 3 at 1-3, ECF Nos. 68 and 68-3; Def.'s Appl. at 3.)

[4] The parties agree that in evaluating the reasonableness of Plaintiffs' counsel's fees and expenses, the Court should apply the lodestar method. (Def.'s Appl. at 5; Pl.'s Resp. Def.'s Appl. Att'y Fees ("Pl.'s Resp.") at 2, ECF No. 70.) Courts have applied the lodestar method in this context. *See Meyers*, 2021 WL 5985164, at *1-2 (noting that the magistrate judge imposed discovery sanctions (fees and costs) under Rule 37(b)(2)(C) and applied the lodestar method in evaluating the reasonableness of the fees requested); *Andre P. Marshall, M.D. Inc. v. Squlpt Mgmt., LLC*, No. 2:24-cv-01784, 2025 WL 2025000, at *9 (C.D. Cal. July 14, 2025) ("Courts routinely use the lodestar method in determining the reasonableness of fees in the context of

659, 665-66 (9th Cir. 2016)); *see also Edmo v. Corizon, Inc.*, 97 F.4th 1165, 1168-69 (9th Cir. 2024) ("To calculate [reasonable] attorneys' fees, courts in the Ninth Circuit use the . . . 'lodestar method.'" (quoting *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1201-02 (9th Cir. 2013))); *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018) ("The 'lodestar [method]' has 'achieved dominance in the federal courts' and is 'the guiding light of the Supreme Court's fee-shifting jurisprudence.'" (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010))); *Zweizig v. Nw. Direct Teleservices, Inc.*, No. 3:15-cv-02401-HZ, 2019 WL 5889296, at *2 (D. Or. Nov. 11, 2019) ("Oregon courts generally . . . [utilize] the lodestar method[.]") (simplified).

"The lodestar method is a two-step process." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) (citing *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000)). First, "the court multiplies the number of hours the prevailing party reasonably spent on litigation by a reasonable hourly rate to determine a presumptively reasonable fee award." *Kim v. Allison*, 8 F.4th 1170, 1180 (9th Cir. 2021) (citing *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546 (9th Cir. 2016)). This "presumptively reasonable fee award" is the "lodestar figure," *Kelly*, 822 F.3d at 1099, and the reasonable hourly rate underlying this figure is "determined by assessing 'the prevailing market rate in the relevant community.'" *Roberts*, 938 F.3d at 1024 (quoting *Kelly*, 822 F.3d at 1099). "[T]he lodestar figure roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case[.]" *Kelly*, 822 F.3d at 1099 (quoting *Perdue*, 559 U.S. at 551).

---

discovery sanctions." (citing *Balcom*, 2025 WL 1146900, at *2 n.2)). The Court does the same here.

Second, "[a]fter the lodestar figure is determined, [a court may exercise its] discretion to adjust the lodestar figure upward or downward based on a variety of [reasonableness] factors 'not subsumed in the lodestar figure.'" *Roberts*, 938 F.3d at 1024 (quoting *Kelly*, 822 F.3d at 1099). These "reasonableness" factors, also "known as the *Kerr* factors," include the (1) quality of representation, (2) results obtained, (3) complexity and novelty of the issues presented, and (4) risk of nonpayment. *Stetson v. Grissom*, 821 F.3d 1157, 1166-67 (9th Cir. 2016) (first citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011); and then citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992)); *see also Vogel*, 893 F.3d at 1158 ("[O]ther considerations . . . may lead the district court to adjust the fee upward or downward, including the important factor of the results obtained." (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983))).

## II.     ANALYSIS

As the parties agree (Def.'s Appl. at 5; Pl.'s Resp. at 2), the Court must "begin [its] analysis by applying the [two-step] lodestar method." *Roberts*, 938 F.3d at 1023 (citing *Bravo*, 810 F.3d at 665-66).

### A.     Reasonable Hourly Rate

The Court's "first step" in applying the lodestar method is to "determine the presumptive lodestar figure." *Edmo*, 97 F.4th at 1168 (citing *Gonzalez*, 729 F.3d at 1202). The "first component" of this presumptive lodestar figure is a reasonable hourly rate. *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015); *see also Roberts*, 938 F.3d at 1026 (explaining that "[f]or purposes of establishing the lodestar figure in an attorney's fees case, district courts must first determine a reasonable hourly rate"). "The established standard when determining a reasonable hourly rate is the rate prevailing in the [relevant] community for

similar work performed by attorneys of comparable skill, experience, and reputation." *Edmo*, 97 F.4th at 1168 (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008)); *see also Kelly*, 822 F.3d at 1099 (observing that "[a] reasonable hourly rate is ordinarily the 'prevailing market rate in the relevant community'" (brackets omitted) (quoting *Perdue*, 559 U.S. at 551)).

SHC's legal team seeks the following hourly rates: (1) $975 for SHC's lead counsel, Sarah Ames Benedict ("Benedict"), a partner at the Portland branch of Davis Wright Tremaine LLP ("DWT"), (2) $760, $725, $650, and $545 respectively for Christopher Byer ("Byer"), Meagan Himes ("Himes"), Olivia Munson ("Munson"), and Jandee Wallis ("Wallis"), all of whom are DWT associates who worked on this matter, and (3) $470 for Erika Buck ("Buck"), a DWT paralegal who assisted Benedict and DWT's associates. (*See* Byer Decl. ¶¶ 13-18; Def.'s Appl. at 5, providing a chart of names, positions, and hourly rates; Decl. Brian Fanning Supp. Def.'s Appl. Att'y Fees ("Fanning Decl.") ¶¶ 3-8, ECF No. 69, appearing to use Munson's maiden name; *cf.* Notice Appearance at 1-2, ECF No. 51, docketing Olivia Wiebe's notice of appearance").

Brian Fanning ("Fanning"), who serves as DWT's Senior Director of Revenue and Profitability, filed a declaration in support of SHC's motion of attorney's fees. (Fanning Decl. ¶ 1.) Fanning's duties at DWT include, among other things, managing the "team responsible for setting billing rates for DWT personnel." (*Id.* ¶ 2.) Fanning's team evaluates DWT's "rates and policies against those of other firms with comparable size, expertise, reputation, and relocation," relying in part on "annual survey data" that "one of the four big accounting firms[]" compiles. (*Id.*)

///

According to Fanning, the accounting firm's "2025 Portland peer data" demonstrates that (1) the "median peer range" for attorneys of Benedict's tenure had an hourly rate $744, and the "first quartile rate" for less experienced attorneys (i.e., eleven to fifteen years compared to sixteen) was $983, (2) the "median peer range" for attorneys of DWT's associates' tenures had hourly and first quartile rates of $668 and $873 (i.e., Byer), $575 and $665 (i.e., Himes), $531 and $704 (i.e., Munson), and $403 and unavailable (i.e., Wallis, a 2024 law school graduate), and (3) the "median peer range" for paralegals of Buck's tenure had an hourly rate of $340. (*Id.* ¶¶ 2-8; *see also* Byer Decl. ¶ 20 & Ex. 7 at 1, attaching a table from the 2024 edition of the ALM Legal Intelligence and International Practice Management Association's Annual Compensation Survey for Paralegals, Practice Support Professionals, and Managers, which reflects that paralegals' median and ninth decile billing rates in the "West North Central" and "Pacific" divisions (i.e., data from nine and forty-one firms) were $340 and $435 and $429 and $560, respectively).

"It is the responsibility of the attorney seeking fees to submit evidence to support the requested hourly rate." *Roberts*, 938 F.3d at 1024 (first citing *Hensley*, 461 U. S. at 433; and then citing *Camacho*, 523 F.3d at 980). Trinh's counsel does not dispute that SHC's counsels' and paralegal's rates are consistent with the prevailing market rates in the relevant community. *See generally Daley v. A&S Collection Assocs., Inc.*, No. 09-cv-00946-ST, 2010 WL 5137834, at *3 (D. Or. Dec. 10, 2010) ("Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997))). Nor does Trinh's counsel argue that SHC's counsel failed to present satisfactory evidence of the prevailing market rate in the relevant community. Instead, Trinh's counsel appears only to dispute the reasonableness of the number of hours that SHC's counsel

billed and whether the Court should award SHC any fees or deny SHC's fee request as moot. (*See* Pl.'s Resp. at 1-4, asking the Court to deny the request as moot or on the merits or exclude certain hours).

"In general, '[a]ffidavits of the [movant's] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the [movant's] attorney, are satisfactory evidence of the prevailing market rate.'" *Hiken v. Dep't of Def.*, 836 F.3d 1037, 1044 (9th Cir. 2016) (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)). As detailed below, judges in this district have recently approved the following rates for SHC's legal team: $975 and 850 for Benedict, $760 for Byer, $401.50 for Himes, $650 and $419 for Munson, $545 for Wallis, and $470 for Buck.

For example, in *Denton v. Shriners Hosps. for Children*, No. 3:23-cv-00826-JR, 2025 WL 2653173, at *1, *3 (D. Or. Sept. 16, 2025), the district court imposed discovery sanctions on the plaintiff's counsel under Rule 37 and awarded SHC approximately $22,000 in attorney's fees and costs. *Id.* Applying the lodestar method, the district court accepted as reasonable Benedict's hourly rate of $975, Byer's hourly rate of $760, Munson's hourly rate of $650, Wallis' hourly rate of $545, and Buck's hourly rate of $470. *Id.* at *3. In doing so, the district court emphasized that the "[w]hile [SHC's] requested rates [we]re on the high end, [the] plaintiff present[ed] no evidence to suggest corporate clients like [SHC] are not paying these rates for work in this practice area." *Id.*

Earlier in the year, in *Gamon v. Shriners Hosps. for Children*, No. 3:23-cv-00216-IM, 2025 WL 415062, at *3 (D. Or. Feb. 6, 2025), the district court similarly imposed discovery sanctions on the plaintiff's counsel under Rule 37 and awarded SHC approximately $20,000 in

fees and costs under Rule 37. *Id.* Evaluating the lodestar method's first component, the district court found that Benedit's requested rate of $850 was reasonable "considering [her fifteen years'] of] experience, [the 2022] OSB Economic Survey . . . , and the mean rates for business litigation in downtown Portland[.]" *Id.* at *2. The district court, however, declined to award Himes' and Munson's requests hourly rates of $660 and $590. *Id.* at *3. The district court explained that the "median hourly billing rate for a lawyer [like Himes] with [four to six] years of experience in downtown Portland is $308, and the [ninety-fifth] percentile is $495," and that the "median rate for a lawyer [like Munson] with [zero to three] years of experience in downtown Portland is $300 per hour, and the [the ninety-fifth] percentile is $538[.]" *Id.* The district court found that "an hourly rate approximately halfway between the median and [ninety-fifth] percentile rates [was] reasonable for [Himes and Munson] based on the information provided," and thus awarded the more "senior litigation associate" (Himes) "$401.50 per hour" and Munson, "$419 per hour." *Id.* (simplified).

Like this Court and unlike the district court in *Gamon*, the district court in *Denton* had the benefit of reviewing Fanning's declaration regarding the "2025 Portland peer data" upon which Fanning's team relies in "setting billing rates for DWT personnel."[5] (Fanning Decl. ¶¶ 2-8.) Further, and like the situation presented in *Denton*, Trinh's counsel does not challenge the reasonableness of SHC's requested hourly rates or present any "evidence to suggest corporate

---

[5] The Court takes judicial notice of the dockets in *Denton* and *Gamon*. *See Abdulaziz v. Twitter, Inc.*, No. 21-16195, 2024 WL 4688893, at *1 n.1 (9th Cir. Nov. 6, 2024) (recognizing that a district "[court] may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue" (quoting *United States v. Aguilar*, 782 F.3d 1101, 1103 n.1 (9th Cir. 2015))); *Luckey v. Mitchell*, No. 22-16556, 2023 WL 6389399, at *1 n.1 (9th Cir. Oct. 2, 2023) (dockets); Fed. R. Evid. 201(c)(1), (d) (providing that a court "may take judicial notice on [their] own . . . at any stage of the proceeding").

clients like [SHC] are not paying these rates for work in this practice area." 2025 WL 2653173, at *3.

Absent any contrary argument, the Court concludes that SHC's counsels' and paralegals hourly rates are reasonable. *Cf.* $28,000.00 in U.S. Currency, 802 F.3d at 1106 ("Because the government did not contest the market fee rate supported by these declarations, the district court was required to presume that rate reasonable.") (citation omitted); *see also Roberts*, 938 F.3d at 1025 (reversing and remanding and emphasizing that "in the absence of countervailing evidence from the [defendant], the [hourly rate] declarations stood unrefuted," and "'[t]he party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy' of the submitted affidavits" (quoting *Camacho*, 523 F.3d at 980)).

### B.    Hours Reasonably Expended

The second component of the lodestar figure is the number of hours reasonably expended. *See* $28,000 in U.S. Currency, 802 F.3d at 1105-08 (addressing each "component of the lodestar [figure]—the [reasonable] hourly rate [and] hours expended," and identifying and treating the "reasonable hourly rate," which is "the prevailing market rate," as the "first component"). "The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Id.* at 1107 (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992)). The "evidence must include . . . detailed documentation of the hours worked." *Id.* at 1105 (citing *Gates*, 987 F.2d at 1397).

There are two methods by which a district court can reduce the hours in an attorney's fee application. The first method entails "conduct[ing] an hour-by-hour analysis of the fee request, and exclud[ing] those hours for which it would be unreasonable to compensate the prevailing

party." *Id.* at 1108 (quoting *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1206 (9th Cir. 2013)). The second method entails "mak[ing] across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a [massive] fee application." *Id.* (quoting *Gates*, 987 F.2d at 1399). A district court must provide a clear and concise explanation to justify reductions greater than ten percent, but it is entitled to impose a small reduction (i.e., a "haircut" of ten percent or less) without a more specific explanation. *See Gonzalez*, 729 F.3d at 1200-03 (explaining that "when a district court reduces either the number of hours or the lodestar by a certain percentage greater than 10%, it must provide a clear and concise explanation for why it chose the specific percentage to apply," but adding that a "district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation") (simplified).

Trinh's counsel objects to the number of hours that SHC claims in its fee request for several reasons. (*See* Pl.'s Resp. at 1-4.) The Court finds most of Trinh's counsel's arguments unpersuasive.

First, Trinh's counsel argues that SHC's motion for attorney's fees is moot because Trinh "voluntarily dismissed her case" and only did so because of the "stress and difficulty of complying with [SHC's] unreasonable and excessive demands for discovery[.]" (*Id.*) Trinh's counsel, however, acknowledged in the stipulated notice of dismissal that the parties "agreed that th[e] stipulated dismissal shall not affect the Court's authority to enforce the monetary sanctions [it previously imposed on Trinh's] counsel pursuant to [Rule] 37(c)(1)." (Stipulated Notice Dismissal at 1.)

///

PAGE 13 – OPINION AND ORDER

Notably, SHC filed its answer and affirmative defenses on October 14, 2024, nearly five months before SHC filed its motion to compel and over seven months before the Court issued its May 30, 2025 Discovery Order. (Def.'s Answer & Affirmative Defs. Pl.'s Second Am. Compl. at 9, ECF No. 49; Def.'s Mot. Compel Discovery Resps. ("Def.'s Mot. Compel") at 10, ECF No. 53; Discovery Order at 7.) Thus, Trinh was not entitled voluntarily to dismiss her case without obtaining SHC's stipulation or a court order. *See* FED. R. CIV. P. 41(a)(1)-(2) (providing, subject to inapplicable exceptions, that if "an opposing party serve[d] either an answer or a motion for summary judgment," a plaintiff seeking to dismiss her case must file a "stipulation of dismissal signed by all parties who have appeared" or obtain a "court order, on terms that the court considers proper"); (*cf.* Byer Decl. ¶¶ 5-11 & Exs. 1-5, reflecting that the parties disputed the fee award).

Trinh's counsel also fails to recognize that Rule 37 sanctions are a "collateral issue over which a [district] court normally retains jurisdiction even after being divested of jurisdiction on the merits[.]" *See Brinker*, 2017 WL 713554, at *1 & n.1 (holding that a "dismissal without leave to amend" did not "excuse disobedience of a discovery order or terminate the [district] court's ability to rule on [a] motion" for sanctions under Rule 37 and seeing "no reason why" Rule 37 sanctions should be treated any differently than a "Rule 11 sanction" (first citing *Cooter & Gell*, 496 U.S. at 395-96; and then quoting *Moore*, 981 F.2d at 445)); *cf. In re Exxon Valdez*, 102 F.3d 429, 431 (9th Cir. 1996) (holding that the "sanctions imposed [in the case] under Rule 37 were collateral to the merits of the actions, just as the Rule 11 sanctions" were a collateral issue in a case in which the district court ultimately lacked subject matter jurisdiction, and noting that a sister circuit "uph[eld] Rule 37 sanctions imposed after . . . [granting] summary judgment" in the

defendant's favor (citing *Heinrichs v. Marshall & Stevens Inc.*, 921 F.2d 418, 421 (2d Cir. 1990) (per curiam))).[6]

Second, Trinh's counsel argues that the Court should not award SHC any fees because the parties simply "disagreed with [one another's] positions about privilege." (Pl.'s Resp. at 3-4.) Not so.

Trinh's counsel fails to acknowledge the events preceding the Court's imposition of sanctions. SHC propounded discovery requests, identified deficiencies, and attempted multiple times over a two-week period to confer in good faith and avoid premature judicial intervention and increased litigation costs. (*See* Discovery Order at 2, describing the relevant procedural history). After Trinh's counsel failed to respond, SHC turned to the Court for a ruling on whether it was entitled to further discovery responses. (*Id.*; *see also* Def.'s Mot. Compel at 1-10; Decl. Christopher Byer Supp. Def.'s Mot. Compel Discovery Resps. ("Byer MTC Decl.") ¶¶ 1-13 & Exs. 1-12, ECF No. 54.) In his less than two-page response, Trinh's counsel argued that SHC's motion was "moot" and "not necessary" because (1) he "produc[ed] the documents requested," i.e., he "produced responses to [SHC's] . . . [requests for admission, production, and interrogatories], as well as over 394 pages of discovery, in addition to the initial disclosures," (2) there were "no major discovery disputes or objections to producing requested documents,"

---

[6] Decisions from other circuits are in accord. *See, e.g.*, *Heinrichs*, 921 F.2d at 421 (expressing the "belie[f]" that the Supreme Court's *Cooter & Gell* decision "made explicit" that a district court possesses the authority to "make post-judgment assessments of discovery expenses, and attorney's fees under Rule 37," and noting that the Fifth Circuit previously stated that the Supreme Court "implicitly recognized" as much before *Cooter & Gell* (quoting *Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1018 (5th Cir. 1981), which cited *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763-64 (1980))); *see also Lew v. Max Int'l, LLC*, 638 F.3d 1318, 1321 (10th Cir. 2011) ("Discovery misconduct often may be seen as tactically advantageous at first. But just as our good and bad deeds eventually tend to catch up with us, so do discovery machinations. Or at least that's what Rule 37 seeks to ensure." (citing *Roadway Express, Inc.*, 447 U.S. at 763)).

and (3) he was "attempting to work cooperatively with [SHC's] counsel . . . to address any deficiencies identified in the outstanding discovery." (Pl.'s Resp. Def.'s Mot. Compel Discovery Resps. at 1-3, ECF No. 55.)

The following day, the Court granted SHC "leave to file a reply in support of its motion to compel . . . to inform the Court if [Trinh's counsel's] recent production was complete." (ECF No. 56, citing LR 26-3(c).) SHC's reply, declaration, and supporting exhibits followed shortly thereafter. (Def.'s Reply Supp. Mot. Compel Discovery Resps. ("Def.'s Discovery Reply") at 1-3, ECF No. 57; Decl. Christopher Byer Supp. Def.'s Reply ¶¶ 1-3 & Exs. A-B, ECF No. 58.) SHC explained that contrary to the representations he made in his opposition, Trinh's counsel had "not remedied any of the significant deficiencies in [Trinh's] discovery responses identified in [SHC's] [m]otion, necessitating this Court's intervention." (Def.'s Discovery Reply at 1.) SHC added that these deficiencies included, but were not limited to, Trinh's counsel's failure to produce documents that he identified in interrogatory responses, production of "numerous documents that [were] glaringly incomplete," re-production of the "exact same documents [that he] previously produced," not the "additional documents" that he had "promised . . . promptly [to] produce," failure to respond to "multiple attempts to confer . . . by phone or email," failure to "include a signed verification with [his client's] supplemental responses," and failure to provide a privilege log from which it could evaluate claims of privilege or address whether he withheld certain documents on privilege grounds. (*Id.* at 2-3) (simplified).

In its Discovery Order, the Court explained that this procedural history supported its imposition of sanctions under Rule 37, and that a more recently filed motion for extension of case management deadlines suggested that as of May 1, 2025, Trinh still had not remedied the discovery deficiencies that SHC raised in its motion. (Discovery Order at 2-3 & n.1, citing Def.'s

Unopposed Mot. Extension Discovery & Pretrial Order Deadlines ("Def.'s Unopposed Mot.") at

2-3, ECF No. 61.) The Court also explained that by failing to respond to the arguments that SHC

raised in its motion to compel, Trinh waived any arguments to the contrary.[7] (*Id.*, first citing

*Kerrigan v. Allstate Ins. Co.*, 543 F. Supp. 3d 843, 845-46 (C.D. Cal. 2021); and then citing

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal.

2011).)

     Despite these facts, Trinh's counsel attempts to cure his failure adequately to address or

timely raise his privilege argument in his response to SHC's motion to compel.[8] (Pl.'s Resp. at 3-

---

[7] The Ninth Circuit has noted that "jurists and litigants" often use the terms "waiver" and "forfeiture . . . interchangeably" but they are "not synonymous," as "[w]aiver is the 'intentional relinquishment or abandonment of a known right,' whereas forfeiture is the 'failure to make the timely assertion of a right.'" *Lui v. DeJoy*, 129 F.4th 770, 780 (9th Cir. 2025) (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 20 n.1 (2017)); *see also Hebrard v. Nofziger*, 90 F.4th 1000, 1006 (9th Cir. 2024) (describing a party's "failure to raise an argument in a timely fashion [as] a forfeiture not a waiver"). If a party's failure to raise a "forfeited issue" does "not prejudice the defense of the opposing party," or the opposing party elects to raise the forfeited issue at a later stage of litigation, a court may review (or revisit) such issues. *See id.* (addressing appellate review, prejudice, and appellees' briefs (quoting *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992))). Here, however, any further review of Trinh's privilege argument would be inappropriate because SHC opposes doing so and Trinh's failure timely to raise it (or address SHC's other arguments) prejudiced SHC's defense. (*See* Def.'s Unopposed Mot. at 2-3 & ECF No. 50, describing, among other things, SHC's cancellation of Trinh's initial deposition, SHC's reliance on Trinh's counsel's assurances related to deficiency discovery when it issued an amended notice of and rescheduled Trinh's deposition, and SHC's subsequent need to cancel Trinh's deposition for a second time and file an unopposed motion for extension of case management deadlines, including of the May 2, 2025 discovery deadline, which the Court set in November 2024, after SHC "attempt[ed] to initiate Rule 26(f) conferral" and "receive[d] [no] response"; Def.'s Reply Supp. Mot. Att'y Fees at 5-6, ECF No. 71, arguing that the Court should "disregard[]" Trinh's counsel's "privilege arguments" because they are "irrelevant" to the matter before it).

[8] Even after the Court issued its Discovery Order and imposed Rule 37 sanctions, Trinh's counsel failed timely to meet his June 13 deadline to supplement Trinh's discovery responses, comply with the Court's Discover Order in other material ways, or address certain deficiencies that SHC raised. (*See* Discovery Order at 5-6; Byer Decl. ¶¶ 3-9 & Ex. 3 at 1-2; Def.'s Mot. at 3-4.)

4.) Relying on the merits of his privilege argument, Trinh's counsel suggests that Rule 37

sanctions are unwarranted because his "nondisclosure, response, or objection was substantially

justified." (*Id.* at 3, citing FED. R. CIV. P. 37(a)(5)(A)(ii).) Trinh's counsel also argues that SHC

was on a "fishing expedition," "engaging in excessive and unreasonable discovery litigation,"

"looking to punish [Trinh's] attorneys for representing people that [SHC] discarded because [it]

did not like their religious beliefs about vaccines," and "wrongfully attempting to obtain

privileged communications," not "engag[e] in a good faith search of relevant documents." (*Id.* at

1, 3-4.)

  The Court finds these arguments unpersuasive. The Court agrees with SHC that Trinh's

counsel's privilege argument is untimely and irrelevant for present purposes. (Def.'s Reply at 5-

6.) SHC's motion to compel concerned discovery obligations and deficiencies well beyond any

untimely privilege argument, and allowing Trinh's counsel to proceed in such a manner would

only further prejudice SHC's defense. *See supra* note 7. Similar to this Court, the district court in

*Denton* rejected counsel's comparable attempts to cure his disregard of discovery obligations.

*See Denton*, 2025 WL 2653173, at *1 n.1 (recognizing that the "plaintiff's counsel ma[de] a

belated attempt to argue that objections to discovery based on the attorney-client privilege were

substantially justified," explaining that counsel's delayed "review [of] text messages for

attorney-client privilege" did not support that his "discovery failures were substantially

justified," and emphasizing that counsel still had not "provide[d] a privilege log regarding the[]

text messages").

  SHC's counsel also declares under penalty of perjury that during a January 22, 2025 in-

person conferral regarding one of Trinh's counsel's other cases against SHC, Trinh's counsel

"conceded the Ninth Circuit does not recognize the[] [subject] privileges apply to plaintiffs in

separate lawsuits who are represented by the same counsel." (*See* Byer MTC Decl. ¶ 5 & Exs. 3-4, summarizing the parties' conferral agreements on January 23, 2025 and invoking this previous agreement about the same privileges and context in a February 6, 2025 email regarding Trinh's case).

For these reasons, the Court rejects Trinh's counsel's argument that his disregard of discovery obligations was substantially justified. *See Lee*, 638 F.3d at 1319-20 (holding that "no one . . . should count on more than three chances to make good a discovery obligation," and noting that a "district court's active participation in the discovery motions practice affords it a superior position . . . for deciding what [Rule 37] sanction best fits the discovery 'crime,' both as a matter of justice in the individual case and 'to deter others who might be tempted to similar conduct'" (simplified) (quoting *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 642 (1976) (per curiam))); 8B Charles Alan Wright et al., *Federal Practice and Procedure* § 2284 (3d ed. Sept. 2025 update) ("[I]t seems clear that judges have . . . taken a tougher view of sanctions for discovery violations . . . , and that sanctions are, as the Supreme Court invited in *National Hockey League*, now being looked to for their deterrent effect in other cases rather than merely as a remedy for the wrong done in the case at hand.").

Trinh's counsel's remaining arguments concern whether (1) SHC is entitled to recover any fees for drafting a reply in support of a discovery motion, and (2) SHC billed a reasonable number of hours for drafting its motion to compel and can recover fees for "conferr[ing] about a discovery dispute or . . . the attorney fee bill." (Pl.'s Resp. at 1-2.) Trinh's counsel argues that SHC billed for discovery review that "would have been necessary regardless of whether [SHC] drafted a motion to compel or not" and cites cases declining to award fees that parties incurred conferring on discovery disputes and drafting a reply in support of a motion to compel, and

finding three to five hours reasonable compensation for drafting such a motion. (*Id.* at 1-3) (simplified).

With respect to SHC's reply, Local Rule ("LR") 26-3 provides that "[u]nless otherwise directed by the Court, a movant may not file a reply supporting a discovery motion." LR 26-3(c). In this case, however, the Court necessarily exercised its discretion to grant SHC leave to file a reply in support of its discovery motion because, in stark contrast to the history that SHC described in its motion to compel, Trinh's counsel claimed that the parties' disputes were "moot" and SHC's motion was "not necessary." (*See* Pl.'s Resp. Def.'s Mot. Compel Discovery Resps. at 1-3, presenting these arguments in a less than two-page response, which included only two cites in support of the argument that it would "not [be] an abuse of discretion for the C[o]urt to deny a motion to compel as moot if the opposing party produces the documents requested," and "[c]ourts often deny motions for sanctions when a motion to compel is denied") (citations omitted).

Contrary to Trinh's counsel's representations, SHC cited issues that Trinh's counsel's "completely disregarded," including deficiencies that "remain[ed] uncured" because he simply "re-produced the exact same documents" that "suffer[ed] from the same [previously identified] deficiencies[.]" (Def.'s Discovery Reply at 2-3) (simplified). SHC aptly noted that Trinh's counsel's claims about "attempting to work cooperatively" were "undermined" by his "continued failure to address [such] deficiencies and failure to respond to [its] multiple attempts to confer[.]" (*Id.* at 3; *see also* Byer MTC Decl. ¶¶ 4-11 & Exs. 3-11, granting extensions of case management deadlines and Trinh's deposition as a courtesy and receiving inadequate responses or no response to detailed explanations regarding Trinh's counsel's continued failure to cure or address clear shortcomings).

It is evident that SHC's reply was necessitated by Trinh's counsel's conduct, which needlessly increased SHC's litigation costs. Thus, SHC is entitled to an award of reasonable attorney's fees it incurred in drafting its reply. *See Gamon*, 2025 WL 415062, at *1-2 & n.1 (excluding a limited number of hours for performing "clerical tasks" but otherwise awarding "attorney's fees incurred in briefing and arguing [SHC's] motion to compel, . . . reply, . . . and sur-reply"); *see also Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081, 1090 (9th Cir. 2025) ("[T]he public has an interest in 'the just, speedy, and inexpensive determination of every action[.]'" (quoting FED. R. CIV. P. 1)); *Lee*, 638 F.3d at 1319-20 (addressing a "litigant [who repeatedly] ignore[d] his discovery obligations" and explaining that when this occurs, "weeks or months (as in this case) pass without progress in the litigation," "[h]ours, days, weeks of lawyers' [and courts'] time are consumed at great expense," and the "[f]ocus shifts from the merits to the collateral and needless," which is "the opposite" of "speedy, inexpensive, [and] just").

With respect to conferral, the Court determined that SHC was entitled to its "reasonable expenses, including attorney's fees and costs, incurred in its unanswered conferral efforts and in litigating the motion to compel." (Discovery Order at 4, citing *Saul*, 2024 WL 4542293, at *2.) The Court did so in part because Trinh's counsel's failure to confer or respond to SHC's counsel's conferral attempts needlessly increased SHC's litigations costs and resulted in Trinh's counsel's inaccurate representations regarding whether any disputes remained and required the Court's intervention.

Other courts have imposed comparable sanctions. *See, e.g.*, *Denton*, 2025 WL 2653173, at *2 ("[T]he discovery violations . . . [involved] abuse of the conferral process itself[,] which [often resulted in SHC] need[ing] to . . . resort to the [court for] assistance to resolve discovery

disputes. [The] [p]laintiff's counsel . . . unjustifiably increased the amount of time necessary to confer regarding the discovery deficiencies. Accordingly, it is necessary for the [c]ourt to sanction counsel by requiring reimbursement of this conferral time."); *DuBose v. Hilton Grand Vacations Club, LLC*, No. 2:24-cv-0064, 2025 WL 1165635, at *1-2 (D. Nev. Apr. 21, 2025) (awarding the defendant the "fees [it] incurred in preparing a motion to compel . . . [and] preparing the motion for attorneys' fees," and noting that "counsel persuasively point[ed] out that [the self-represented plaintiff's] refusal to engage . . . required counsel to expend time they otherwise would not have had to expend"), *findings and recommendation adopted*, 2025 WL 1360553, at *1 (D. Nev. May 8, 2025); *but cf. Gamon*, 2025 WL 415062, at *2 (addressing a situation that was similar in some but different in other respects and "reduc[ing] 2.7 of the hours [that SHC's] counsel log[ged] because that [part of counsel's] time was spent on unrecoverable clerical work, conferral with opposing counsel, initial discovery analysis, and emailing their client").

The only remaining question, then, is the reasonableness of the hours that SHC billed for conferring and litigating its motion to compel. SHC seeks to recover (1) $4,776.50 in fees for 6.20 hours of work "related to the preparation of its Application for Attorneys' Fees," (2) $6,994.00 in fees for 9.40 hours of work related to Trinh's counsel's "failure to comply" with the Court's May 30, 2025 Discovery Order, and (3) $43,936.50 in fees for 59.20 hours of work related to SHC's litigation of its motion to compel (i.e., "reviewing [Trinh's counsel's] deficient and subsequent inadequate supplements, conferral efforts, and preparing the briefing" on its motion to compel).  (Byer Decl. ¶¶ 24-26 & Exs. 8-10, providing an itemization for each of these categories).

///

PAGE 22 – OPINION AND ORDER

"It is 'well established that time spent in preparing fee applications' . . . is compensable."

*Future Mot., Inc. v. Lai*, No. 3:23-cv-1742-AR, 2025 WL 2556576, at *1 n.1 (D. Or. Mar. 17, 2025) (Simon, J.) (quoting *Gonzalez*, 729 F.3d at 1210); *see also DuBose*, 2025 WL 1165635, at *2 (relying on the "principle that a party entitled to recover attorneys' fees should also recover the reasonable attorneys' fees incurred in obtaining a fee award," and other courts "award[ed] fees under Rule 37 for 'fees on fees' based on same principle") (simplified). SHC spent 6.2 hours drafting and revising its fee motion, declarations, and supporting exhibits. (Byer Decl. Ex. 10 at 1.) The Court finds SHC's 6.20 hours reasonable and thus awards SHC $4,776.50 for this work.

With respect to SHC's fees related to Trinh's counsel's compliance with the Court's Discovery Order, the Court declines to award SHC all of the attorney's fees it requests under Exhibit 9.

SHC's fee request includes, among other billing entries: (1) Benedict's $682.50 in fees for 0.70 hours of work reviewing the Court's Discovery Order and SHC's counsel's "months['] worth of bills" and directing Byer's work "regarding the same," (2) Byer's $912.00 in fees and 1.2 hours of work preparing SHC's counsel's itemization in advance of conferral and drafting a related correspondence to Trinh's counsel, and (3) Byer's combined $912.00 in fees and 1.2 hours corresponding with Trinh's counsel's regarding the "sanctions awarded" and SHC's "outstanding demand for attorney's fees[.]" (Byer Decl. ¶ 25 & Ex. 9 at 1.) The Court finds these entries reasonable and compensable under the circumstances presented, and awards SHC $2,506.50. The Court, however, declines to award SHC the remaining $4,487.50 in fees it requests for work related to the Court's Discovery Order. (*See* Discovery Order at 6, "If the parties cannot agree on an amount or if Trinh's counsel does not respond to SHC's first attempt to confer within three business days, SHC shall file an application for the attorney's fees and

costs authorized herein."; Stipulated Notice Dismissal at 1, preserving the "previously ordered" sanctions).

SHC's counsel's remaining fees concern time spent "eliminat[ing] non-discovery [billing] entries," "strategiz[ing]" on how to proceed, and before obtaining a stipulated dismissal with prejudice, reviewing and analyzing supplemental discovery received from Trinh's counsel and the extent to which Trinh's counsel complied with the Court's Discovery Order, and corresponding with their client and Trinh's counsel about such matters. These entries are vague, include clerical tasks, led to a stipulated dismissal with prejudice, and exceeds the scope of the Court's award. (*Cf.* Byer Decl. Ex. 1 at 1-2, emailing Trinh's counsel about the fee award on June 13 and June 23, 2025, i.e., pre- and post-dismissal, and advising that SHC demanded "fees totaling $43,935.50," and if Trinh's counsel opposed, SHC would "proceed with preparing an application for [its] fees, which [would include the additional costs incurred in preparing the application"); *Schultz v. Nw. Permanente P.C.*, No. 3:20-cv-00626-IM, 2022 WL 3909948, at *4 (D. Or. Aug. 31, 2022) (excluding counsels' entries for "prepar[ing] strategy" and "intra-office meetings"); *see also Gill v. Gill*, 712 F. App'x 655, 655-56 (9th Cir. 2018) (affirming the district court's imposition of sanctions under Rule 37(b) and explaining that "[a]ll of the fees awarded related to the cancelled depositions and document production failures, the motions to compel or dismiss based on the same, and other actions necessitated by [the plaintiff's] discovery violations").

Finally, the Court turns to SHC's request for $43,936.50 in fees related to SHC's motion to compel (i.e., 59.20 hours for "reviewing [Trinh's counsel's] deficient discovery and subsequent inadequate supplements, conferral efforts, and preparing the briefing for [SHC's]

[m]otion to [c]ompel"). (Byer Decl. ¶ 24 & Ex. 8 at 1-2.) The Court excludes portions of these billed hours.

In its billing entries dated April 28 to April 30, 2025, SHC seeks to recover a total $5,829.50 for 7.6 total hours of work. (*Id.* Ex. 8 at 2.) SHC describes this work in five billing entries and these terms: (1) "[r]eview [the] case schedule in preparation for proposing [an] extension; strategize concerning discovery; correspond with [Trinh's counsel] concerning [a] proposed extension to case schedule; [and] correspond with [the] client"; (2) "[s]trategize regarding proposed limited extensions to discovery deadlines"; (3) "[c]orrespond with [the] client; correspond with opposing counsel; [and] draft [a] motion for extension of time"; (4) "[r]eview and revise [the] motion for extension of time"; and (5) prepare unspecified "responses to written discovery requests by [Trinh and] revise [the] draft" motion for extension of time. (*Id.*)

The Court finds 7.6 total hours excessive considering the work performed and inclusion of unspecified amounts of time performing tasks that courts have deemed clerical work. *See Gamon*, 2025 WL 415062, at *2 (electing to exclude "2.7 of the hours [that SHC's] defense counsel log[ged] because that [portion of] time was spent on unrecoverable clerical work, conferral with opposing counsel, initial discovery analysis, and emailing their client"). The Court recognizes that it referred to SHC's motion for extension of time in its Discovery Order and that SHC proposed alternative schedules because its motion to compel remained pending. (*See* Discovery Order at 3 n.1; Def.'s Unopposed Mot. at 3-4.) However, Trinh's counsel did not oppose the motion, which was for the "sole purpose of conducting [Trinh's] deposition." (Def.'s Unopposed Mot. at 1.) Given these facts, the Court finds that two hours (billed at the primary

rate of $760.00) was reasonable for this work and excludes the remainder (i.e., the Court awards $1,520.00 and excludes $4,309.50 for 5.6 hours of work).

SHC's other billing entries cover the period spanning from January 22 through April 17, 2025, and a combined total of 51.60 hours of work and $38,107.00 in attorney and paralegal fees. (*See* Byer Decl. Ex. 8 at 1-2, seeking $376.00 in paralegal fees based on Buck's only entry on March 19, 2025). The Court concludes that a reduction in hours is also warranted for these billing entries.

These entries appear to cover at least some review of initial discovery that would have been necessary in any case. (*Id.* at 1-2.) SHC's itemization also includes entries attributed to general "[c]orrespond[ence] with [its] client" and "strategiz[ing]" about "written discovery." (*Id.*) For these reasons, the Courts reduces SHC's hours by 10% (i.e., a "haircut") and awards SHC $34,296.30 for 46.44 hours of work (i.e., $38,107.00 or 51.60 hours multiplied by 0.90). *See Gonzalez*, 729 F.3d at 1200-03 (explaining that "when a district court reduces either the number of hours or the lodestar by a certain percentage greater than 10%, it must provide a clear and concise explanation for why it chose the specific percentage to apply," but adding that a "district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation.") (simplified).

### C. Adjustments to the Lodestar

It is well settled that "[t]he lodestar amount presumably reflects the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation." *Hood River Cnty. Sch. Dist. v. Student*, No. 3:20-cv-01690-SI, 2022 WL 1153986, at *5 (D. Or. Apr. 19, 2022) (quoting *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993)). Consistent with the strong presumption that lodestar is reasonably, the Court finds no adjustment to the lodestar is

warranted. *See id.* (explaining that a district "court may rely on any of [the aforementioned] factors to increase or decrease the lodestar figure, [but] there is a 'strong presumption that the lodestar is the reasonable fee'" (quoting *Crawford v. Astrue*, 586 F.3d 1142, 1149 (9th Cir. 2009))).

## CONCLUSION

For the reasons stated, the Court GRANTS IN PART SHC's motion for attorney's fees (ECF No. 67), and AWARDS SHC $43,099.30 (i.e., the sum total of $4,776.50, $2,506.50, $1,520.00, and $34,296.30).[9]

**IT IS SO ORDERED.**

DATED this 21st day of October, 2025.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge

---

[9] As previously explained, Trinh's counsel, not Trinh, must cover SHC's fee award. *See Floyd v. Amazon.com Inc.*, No. 22-cv-01599, 2025 WL 1094391, at *4 (W.D. Wash. Apr. 10, 2025) ("[The plaintiff's] counsel's conduct . . . needlessly prolonged this litigation and required considerable judicial resources, as well as time and effort on the part of [the] [d]efendants, and the dispute remains unresolved even now. Under these circumstances, the [c]ourt finds that, instead of imposing discovery sanctions on [the plaintiff] himself, [the] [d]efendants are entitled to request an award of attorney's fees and expenses, to be paid by [the plaintiff's] counsel, incurred in bringing the motion to compel and the motion for discovery sanctions.") (simplified).